MARJORIE M. CRONIN, administratrix, *vs*. PAUL F. MCCARTHY, JR.

Plymouth.  March 11, 1986. — June 25, 1986.

Present: GRANT, PERRETTA, & SMITH, JJ.

*Evidence,* Expert opinion. *Witness,* Expert.

At the trial of a wrongful death action arising from the collision of two motor vehicles on a roadway, the judge did not abuse his discretion in permitting two police officers, each of whom had many years' experience in the investigation of accidents, to give their respective opinions that, at the point of impact of the two vehicles, the decedent's vehicle was being operated in the wrong direction in the defendant's lane. [448-451]

CIVIL ACTION commenced in the Superior Court Department on March 9, 1982.

The case was tried before *William H. Carey,* J.

*Albert E. Grady* for the plaintiff.

*John L. Allen* for the defendant.

PERRETTA, J. At trial on a complaint brought under G. L. c. 229 (the so-called Wrongful Death Statute), the key issue was whether the defendant was driving his Dodge Ramcharger automobile in a northerly direction in the southbound lane of a roadway or whether the plaintiff's decedent was driving his Jeep in a southerly direction in the northbound lane, when the two collided. Each of the parties presented an accident reconstruction expert who testified in support of a particular side of the issue. Additionally, two police officers who had investigated the accident were allowed to give their respective opinions that, at the point of impact, the decedent's vehicle was in the defendant's lane. The jury returned a special verdict, answering that the defendant had not been negligent. On appeal, the plaintiff argues that, because the police officers lacked training and experience in the area of accident reconstruction,

it was error to allow them to express their opinions to the jury. We affirm.

We note from the outset that it was not necessary for the officers to be accident reconstruction experts in order to testify in the manner described. "A witness's training and experience may well qualify him to give an opinion in reference to a problem which he has never before encountered in precisely the same form. *Hardiman* v. *Brown,* 162 Mass. 585 [1895]. " *Boston Gas Co.* v. *Assessors of Boston,* 334 Mass. 549, 574 (1956), quoting from *Commonwealth* v. *Bellino,* 320 Mass. 635, 638, cert. denied, 330 U.S. 832 (1947). On the other hand, "[t]he fact that a person qualifies as an expert in one subject does not qualify him to give an expert opinion in regard to another, albeit somewhat related, subject." Liacos, Massachusetts Evidence 111 (5th ed. 1981). See, e.g., *Guinan* v. *Boston Elev. Ry.,* 267 Mass. 526, 528 (1929); *Commonwealth* v. *Seit,* 373 Mass. 83, 91-92 (1977).

Whether a witness has the requisite qualifications to testify as an expert and render an opinion on any given topic is a question to be determined on the basis of the evidence of the witness's expertise in the area to which the opinion pertains and not by application of a rigid rule. The test is a flexible one. "There is no prescribed formality for the admission of expert testimony. All that is necessary is that the subject matter be one about which special knowledge beyond that possessed by the average juryman will aid the jury in their deliberations, and that a person possessing such knowledge give opinions pertinent to the issues of the case founded upon facts which either are conceded or could warrantably be found upon other evidence." *Lovasco* v. *Parkhurst Marine Ry.,* 322 Mass. 64, 67 (1947). The trial judge's decision concerning the qualifications of a witness to testify as an expert is one which will "rarely [be] upset on appellate review." *Commonwealth* v. *Seit,* 373 Mass. at 92.

On the date of the accident, Melvin D. Martin had been with the police department for some ten years, twelve at the time of trial. Throughout those years, he had had occasion to investigate an average of twenty to thirty automobile accidents

a year. He arrived at the scene of the collision almost immediately after it happened. The decedent's Jeep was on its left side, engulfed in flames, on the southbound side of the roadway. The defendant's Ramcharger was in the northbound lane about thirty-six feet away from the Jeep.

Along with other officers, Martin investigated the accident. He took various specific measurements, made note of the surface of the roadway generally, and made certain observations. This information was then put in diagram form by him. His observations included: scrape and gouge marks in the northbound side of the roadway as well as debris, such as pieces of wood, broken glass, radiator coolant, and metal, which he identified as the taillight lens that was broken and missing from the Jeep. In the southbound lane of the roadway, he observed a black tire mark which, in his view, was not consistent with a brake mark. Over the plaintiff's objection, Martin was allowed to state that, based on the measurements he had taken and the debris, scrapes, and gouges in the roadway, he was of opinion that the collision had occurred in the northbound lane.

Officer William Sprague investigated the accident with Martin. Sprague had sixteen years' experience as a police officer during which time he had investigated, on an average, twenty to twenty-five automobile accidents a year. Throughout his career as a police officer, he had taken courses in the areas of breathalyzers, defensive driving, high speed pursuit driving, and accident investigation. His accident investigation studies included scientific reconstruction of automobile accidents. He was uncertain, however, whether this last area of instruction was undertaken shortly before or shortly after the accident in issue.

Sprague's observations of the collision scene were consistent with those of Martin. As described by Sprague, debris was scattered everywhere, but the "bulk" of it was in the northbound lane of the roadway. Again over the plaintiff's objection, Sprague was allowed to testify that, based on his sixteen years of experience in investigating automobile accidents and his

observations made at the collision scene, he had formed an opinion that the cars had collided in the northbound lane.

A comparison of this evidence (testimony of Martin and Sprague) with that found in cases[1] discussing an issue substantially similar to that here in contention leads us to conclude that we cannot say that the trial judge abused his discretion in allowing Martin and Sprague to render their opinions to the jury. The cases collected at note 1, *supra,* also treat and dispose of the plaintiff's remaining contentions concerning the opinion evidence of the officers. See also *Commonwealth* v. *Boyd,* 367 Mass. 169, 181-183 (1975).

*Judgment affirmed.*

---

[1] See, e.g., *Lenehan* v. *Travers,* 288 Mass. 156, 158-159 (1934) (auto mechanic, who had never attended engineering or technical school, who had never made a study of forces or the actions or reaction of forces, but who had examined automobile, properly testified as expert concerning facts of speed necessary to cause damage to plaintiff's auto); *Commonwealth* v. *Shea,* 356 Mass. 358, 361 (1969) (police officer, who had taken breathalyzer course and had used the instrument many times, could testify as expert, notwithstanding shortcomings revealed with respect to his knowledge and skill in administering test); *Commonwealth* v. *Roy,* 2 Mass. App. Ct. 14, 23-24 (1974) (member of arson squad competent to give expert opinion as to cause of fire); *Commonwealth* v. *Siano,* 4 Mass. App. Ct. 245, 248 (1976) (fire investigator who had investigated 178 fires could testify as expert); *Power Serv. Supply, Inc.* v. *E. W. Wiggins Airways, Inc.,* 9 Mass. App. Ct. 122, 130 (1980) (pilot could testify as expert in helicopter crash, even though he had no special knowledge in helicopter mechanics but had training in aeronautics and engineering); *Commonwealth* v. *Pope,* 19 Mass. App. Ct. 627, 628-629 (1985) (police officer, experienced in field of gambling, could testify as expert concerning activities). Compare *Commonwealth* v. *Seit,* 373 Mass. at 91-92 (pathologist but not ballistician could testify with respect to the spinning effect on the victim of a gunshot wound because such effect "was conditioned by the extent or depth of the wound . . .[and the ballistician], having no command of physiology or pathology, was not qualified . . . although he understood ballistics").