STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. JACK LABRUTTO, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued October 25, 1988—Decided February 16, 1989.

188

*Glen P. Niemy,* Assistant Prosecutor, argued the cause for appellant and cross-respondent (*Alan A. Rockoff,* Middlesex County Prosecutor, attorney).

*Angelo R. Bianchi* argued the cause for respondent and cross-appellant.

The opinion of the Court was delivered by

GARIBALDI, J.

Police officers are usually the first witnesses to arrive at the scene of an automobile accident. Before physical evidence at the scene is removed, distorted, or tampered with, they have the unique opportunity to observe it. The primary issue in this appeal is whether an investigating state trooper, not qualified as an expert, may testify about the vehicles' point of impact based on his own observations. We hold that the state trooper's testimony is admissible under *Evid.R.* 56(1).

Secondary issues in this appeal raised in defendant's cross-petition are whether the trial court adequately charged the jury, improperly permitted an expert to testify in rebuttal, and committed errors in denying defendant's motions for a mistrial, acquittal, and a new trial because of the above and other perceived errors.

I

In the early morning of December 1, 1984, New Jersey State Troopers Eric Mutter and Thomas Mikoljczyk were dispatched to the scene of a motor vehicle accident on the Garden State Parkway, arriving a few minutes after 4:00 o'clock. The Parkway near the accident scene consists of four straight clearly marked lanes in either direction, each with shoulders consisting of ten feet of paved macadam followed by a grassy dirt area or berm. There are no street lights in the area. On that morning the weather was clear and cold and the road was dry.

On arrival at the scene of the accident, Trooper Mutter observed two vehicles off the side of the road. The first of these, a Lincoln, was parked facing northward on the berm and dirt portion of the roadway shoulder. The second, a Chevrolet Camaro, was located further up on the embankment facing

southeast. Trooper Mutter first examined the Camaro, finding it abandoned and extensively damaged in the rear. He then approached the Lincoln, which was also extensively damaged in its right front. He observed a man, later identified as defendant, Jack LaBrutto, standing outside the rear of the car. Defendant had blood on his face. In the front seat of the Lincoln, Trooper Mutter observed a second man, later identified as James Calavano, who was apparently unconscious.

Trooper Mutter asked defendant what had happened. Defendant replied, "I looked up and the car was there." The trooper later testified that he detected an odor of alcohol on defendant's breath, that defendant's eyes were bloodshot and watery, and that he staggered when walking and swayed while standing. When told that the unconscious passenger would have to be taken to a hospital, defendant reportedly became extremely agitated and began yelling. The trooper then continued his investigation. Soon after, he found the driver of the Camaro, later identified as Michael R. Pignatelli, underneath the Lincoln, face down with his head near the left front wheels and his feet near the right front wheels. Mr. Pignatelli, an off-duty police officer for the Parsippany–Troy Hills Police Department, was dead.

After securing the area, Trooper Mutter placed defendant in a police car. Later, defendant was sent to an area hospital. After he had been treated for cuts on his head and other minor injuries, blood was taken from him at 5:26 a.m. Meanwhile, at the request of Trooper Mutter, a police photographer took eight photographs of the accident scene. Trooper Mutter took notes of what he observed at the accident scene and later filed a police report. He also prepared a diagram of the accident scene based on his own observations.

On December 3, 1984, defendant voluntarily gave a written statement to the State Police about the accident. According to his recounting of the events, after he and Mr. Calavano had consumed four vodka and tonics, they got into his car. He then

drove onto the Parkway. Later, while proceeding at approxi-
mately fifty miles per hour on the extreme right lane, he
observed a car parked in the shoulder and sticking out into the
right lane immediately after an underpass. Defendant stated
that as he stuck his right arm out to protect Calavano, who was
asleep, his car collided with the other vehicle. He denied
having left the paved roadway prior to the accident.

Defendant was charged with violating the death-by-auto stat-
ute, *N.J.S.A.* 2C:11–5, by causing another's death due to his
reckless driving. At trial the first witness to testify was
Trooper Mutter, a seven-year veteran of the New Jersey State
Police and a general-duty road trooper. His duties consisted
primarily of investigating motor vehicle-related incidents on the
Parkway. Prior to the time of the accident in question, he had
investigated approximately 400 motor vehicle collisions. In
addition, he had completed a two-week course in accident inves-
tigations at the State Police Academy.

Trooper Mutter drew a diagram of the scene of the accident
in front of the jury based on his earlier diagram. He testified
that he observed approximately ninety feet of tire tracks on the
grassy berm area alongside the roadway leading to a point at
which there were scuff marks on the grass and widespread
debris. He also noticed two sets of tire marks leading away
from this point, one set leading eighty-four feet to the Camaro,
the other leading fifty-four feet to the Lincoln. Over the
objection of defendant, Trooper Mutter stated his view that the
point of impact of the two cars was at the end of the ninety-foot
tire track. His opinion was based on personal observations of
the tire tracks, scuff marks, debris, the position of the two
vehicles, and the nature of the vehicles' damage. The trial
court permitted this testimony, stating that it would allow "any
opinions which are supported by lay perceptions of physical
evidence at the scene."

The State also presented witnesses who demonstrated that on
the night of the accident, defendant had a blood-alcohol level

of .120, well above the .100 level required for finding that defendant was driving while intoxicated. *See N.J.S.A.* 39:4–50(a). Dr. Charles Tindall, Jr., qualified as a forensic expert in chemistry, testified that this was a high enough blood-alcohol level to affect one's driving ability. He also testified that defendant's blood-alcohol level indicated that defendant had imbibed substantially more on the night of the fatal accident than he claimed. In addition, Dr. Kong L. Tan, a Middlesex County Medical Examiner, qualified as an expert in the field of pathology, testified that decedent's injuries, the grass stains on his clothing, and the grass found in his mouth were consistent with someone who died after being hit by a car while standing on grass. Under cross-examination Dr. Tan stated that his findings did not preclude the possibility that decedent had been struck while standing at the end of the grass.

In his defense, defendant produced Dr. Mark Marpet, who qualified as an expert in the field of forensic-engineering science. Dr. Marpet provided a reconstruction of the accident based on a site inspection six months after the crash, photographs, police reports, and defendant's version of the facts. He disputed Trooper Mutter's claim that the grass shoulders contained debris, tire tracks, and scuff marks following the collision, noting that none of this could be observed in photographs taken at the scene. Dr. Marpet also testified based on his own observations that when driving down the Parkway the accident scene appears shortly after an underpass, supporting defendant's version of the sudden appearance of decedent's car. In addition, he testified that a reflector post located off the side of the road near the accident scene, which the State claimed had been driven over by defendant, was not damaged enough for that to have occurred. Hence, Dr. Marpet concluded that the physical evidence supported defendant's version of the facts, *i.e.,* that defendant hit decedent's car only because it stuck out into the roadway, and that defendant's car did not go onto the road shoulder prior to the collision.

In response to Marpet's testimony, the State provided its own expert rebuttal witness, Investigator Rocco Mazza of the Middlesex Prosecutor's Office, who was trained in automobile-collision reconstruction. Defendant objected to permitting this testimony because although he had been advised that Mazza would be used to rebut Marpet's testimony, the State had not provided a report for Mazza or a statement of the facts and opinions on which Mazza was expected to testify, as required by *Rule* 3:13–3(a). The trial court, however, noting the limited rebuttal nature of Mazza's testimony, permitted him to testify so long as he limited his testimony to the parameters of Marpet's testimony, finding that this could not surprise defendant and would have no prejudicial effect.

Investigator Mazza criticized Dr. Marpet's testimony. He noted that it would be "impossible" to reconstruct an accident based solely on photographs and a visit to the scene six months after the accident as Marpet claimed to have done. He disputed Marpet's analysis of the damaged reflector post, stating that damage of the kind done could indeed result from being driven over rather than just being hit. He also indicated that it was not unusual for photographs not to show signs of debris and tire marks in grass. Investigator Mazza stressed that tire marks and ground scuff marks were crucial to a reconstruction, and that he never would conduct a reconstruction based solely on photographs and debris. In addition, he noted that the grass stains and tears on decedent's clothes, as well as the grass found in decedent's mouth, were consistent with the view that decedent had been dragged through the grass and cast doubt on defendant's position that decedent was hit on the road or not dragged on the grass for some distance.

Investigator Mazza said Trooper Mutter's analysis of the accident scene was fully supported by the physical evidence. In response to cross-examination he admitted that he relied on Trooper Mutter not to have lied about the tire tracks, but stated that the condition of decedent's clothing and the nature of

damage to the cars supported Mutter's accident report and diagram.

At the conclusion of Investigator Mazza's testimony both sides rested. Following summation, the court charged the jury. In so doing it refused to include a number of instructions requested by defendant: (1) that an adverse inference could be drawn from the fact that Trooper Mutter's partner, Thomas Mikoljczyk, had not been called by the State to testify despite being present on the morning of the accident; (2) that the jury could consider that if decedent's conduct was the efficient producing cause of death, defendant would be entitled to a "not guilty" verdict; and (3) that intoxication alone does not necessarily constitute recklessness.

After requesting and receiving a readministering of the instructions on the "death by automobile" statute, the jury rendered a verdict finding the defendant guilty. Defendant then made a motion for a new trial, arguing, among other points, that Trooper Mutter was not a reconstruction expert although he had testified as one. In denying defendant's motion, the trial court noted that Trooper Mutter had never been held out as a qualified reconstruction expert and was limited to layman's testimony. This was reflected by the fact that he "did not testify as to velocities including speed or direction from the mechanical damage that resulted from the impact as a reconstruction expert would do."

Defendant was sentenced to two-years probation with a special condition that he serve 120 days in jail. He appealed to the Appellate Division, which reversed his conviction in an unpublished *per curiam* decision. In so ruling the court specifically noted that the charge to the jury was "adequately and fairly set forth," and that there was sufficient evidence to sustain a guilty verdict even if the jury accepted defendant's version of the accident. Nonetheless, because State Trooper Mutter was not an accident reconstruction expert, the Appellate Division concluded that the trial court had committed reversible error by

permitting him to testify about his opinion of the vehicles' point of impact. The Appellate Division found that Mutter's improperly-admitted opinion "could have led the jury to a result it otherwise might not have reached." *See State v. Bankston*, 63 *N.J.* 263, 273 (1973). Therefore, it reversed on the basis of Mutter's testimony. It concluded that all the other issues raised by defendant were without merit.

The State filed a petition for certification with this Court, claiming that the Appellate Division had erred on the point of impact issue. After we granted certification, 110 *N.J.* 300 (1988), defendant filed a cross-petition for certification, which we granted. 111 *N.J.* 652 (1988). In his cross-petition, defendant repeats his arguments that the trial court inadequately charged the jury, that it committed error in permitting Mazza to testify, and that it committed error in denying defendant's motions for a mistrial, acquittal, and a new trial.

## II

The admissibility of opinion evidence rests within the discretion of the trial court. Our review of this record establishes that the trial court properly admitted Trooper Mutter's non-expert point of impact opinion testimony under *Evid.R.* 56(1).

*Evid.R.* 56(1), which applies to lay witnesses, provides:

(1) If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clear understanding of his testimony or to the determination of the fact in issue.

It is well-established that a lay witness may give his opinion in matters of common knowledge and observation. *See* Biunno, *Current N.J.Rules of Evidence, Comment 2 to Evid.R. 56.*

The first requirement of *Evid.R.* 56(1), expressed in (1)(a), is that a lay witness must have actual knowledge, acquired through his or her senses, of the matter to which he or she testifies. *See Current N.J.Rules of Evidence, supra,*

*Comment 1 to Evid.R. 56; Evid.R.* 1(14) ("perceive" means to acquire knowledge through one's own senses); *see also Pierson v. Frederickson,* 102 *N.J.Super.* 156 (App.Div.1968) (court permitted a witness, an electronics engineer experienced in using instruments that measure sound waves to detect the movement of vehicles, who heard defendant's vehicle just before it collided, to offer his opinion of the minimum speed that defendant's car was travelling). The second requirement, expressed in (1)(b), is that the opinion of the lay witness must help the trier of fact to understand the witness' testimony or determine a fact in issue. Hence, in order to admit lay opinion the trial court must determine first that the witness' opinion is "rationally based" on the witness' personal perception, and then that the opinion will be helpful to an understanding of the witness' testimony or the case in general.

Courts in New Jersey have permitted police officers to testify as lay witnesses, based on their personal observations and their long experience in areas where expert testimony might otherwise be deemed necessary. In *Trentacost v. Brussel,* 164 *N.J.Super.* 9 (App.Div.1978), aff'd, 82 *N.J.* 214 (1980), a tenant's action against her landlord to recover for injuries sustained when she was mugged in the hallway of her apartment building, the investigating detective was allowed to testify that the apartment building was located in a high crime neighborhood. The defendant argued that the detective's testimony should have been excluded because he had not been qualified as an expert. The court allowed the testimony under *Evid.R.* 56(1), noting that the detective had investigated approximately 75–100 crimes in the neighborhood over a three-year period, including many muggings. 164 *N.J.Super.* at 20.

Likewise, in *State v. Jackson,* 124 *N.J.Super.* 1 (App.Div.), *certif. den.,* 63 *N.J.* 553 (1973), the court held that a detective was competent as a non-expert to offer his opinion that he had observed the defendant under the influence of narcotics. The detective's background included specific schooling and training in the field of narcotics and participation in 75–100 arrests and

seizures of evidence pertaining to narcotics. The court conclud-
ed that a lay witness, such as the detective in that case, "if
sufficiently experienced and trained, may testify generally as to
the observable reaction of drug users and of the technique of
the use." 124 *N.J.Super.* at 4. Finally, in *State v. Perez*, 150
*N.J.Super.* 166 (App.Div.), *certif. den.*, 75 *N.J.* 542 (1977), a
detective was permitted to offer his opinion that the voice of
the defendant taken from a voice exemplar matched a voice in a
taped telephone conversation even though he had not been
qualified as an expert in voice identification. The detective had
previously monitored numerous telephone conversations involv-
ing the defendant. Moreover, the taped conversation and the
voice exemplar were both played in front of the jury.

We find no reason why an investigating police officer
should not be allowed to testify as a non-expert based on his
own observations regarding the point of impact of two vehicles
in an automobile accident case. We find no merit in the posi-
tion that the police officer's opinion on the point of impact
should be excluded because it invades the province of the jury,
or that the officer's testimony is unnecessary because the
average juror can readily determine the point of impact from
the officer's description of the physical evidence. Nor do we
agree that only a police officer who is qualified as an accident
reconstruction expert can give his opinion of the point of
impact. *Contra Rogalsky v. Plymouth Homes, Inc.*, 100 *N.J.
Super.* 501 (App.Div.), *certif. den.*, 52 *N.J.* 167 (1968). To the
extent that *Rogalsky* stands for the proposition that a police
officer may not offer his point-of-impact opinion, it is overruled.

We acknowledge that there may be some cases in which
determining the point of impact of a collision will involve such
complicated technical and scientific evidence that only a quali-
fied reconstruction expert could rationally form an opinion
about the point of impact. We anticipate that such complicated
cases seldom will occur, and leave it to the trial courts to

determine the necessity of having expert testimony in such cases.

Our holding that a police officer who is not qualified as an accident-reconstruction expert may testify based on his own observations of the point of impact is supported by many out-of-state cases. Most hold that an experienced police officer may properly testify on his or her "skilled" or "expert" opinion of the point of impact based on personal observations of physical evidence such as skid marks and debris found at the scene of an accident. *See* Annotation, "Admissibility of opinion evidence as to the point of impact or collision in motor vehicle accident case," 66 *A.L.R.*2d 1048, 1064 (1959). These cases hold that it is unnecessary for the officer to possess a formal certificate qualifying him as an accident-reconstruction expert in order to offer his "skilled" or "expert" opinion so long as he is experienced and schooled in investigating motor vehicle accidents. *See, e.g., Parris v. Harris,* 351 *F.*2d 52, 55 (10th Cir.1965) (following Oklahoma law); *Sharp v. Argo–Collier Truck Lines Corp.,* 356 *So.*2d 147, 149 (Ala.1978); *Smith v. Davis,* 281 *Ark.* 122, 663 *S.W.*2d 165, 166 (1983); *Bullard v. Stonebraker,* 101 *Ariz.* 584, 422 *P.*2d 700, 701 (1967); *Dragon v. Grant,* 429 *So.*2d 1329 (Fla.Dist.Ct.App.1983); *Hamdorf v. Corrie,* 251 *Iowa* 896, 101 *N.W.*2d 836, 840 (1960); *Cronin v. McCarthy,* 22 *Mass.App.Ct.* 448, 494 *N.E.*2d 411, 412 (1986); *State v. Schaeffer,* 378 *N.W.*2d 115, 116 (Minn.Ct.App.1985); *DeLeon v. Louder,* 743 *S.W.*2d 357, 359 (Tex.Ct.App.1987). *Contra Dauksch v. Chamness,* 11 *Ill.App.*3d 346, 296 *N.E.*2d 592, 597 (1973); *Milwaukee v. Bub,* 18 *Wis.*2d 216, 118 *N.W.*2d 123, 127–28 (1962).

Several other recent out-of-state cases hold that a police officer may testify as a lay witness and need not qualify as an expert to testify about the point of impact based on his personal observations. Most of those cases, nonetheless, consider the officer's experience to determine if a proper foundation had been laid for the officer's opinion. For example, in *Mitchell v. Oldford & Sons, Inc.,* 163 *Mich.App.* 622, 415 *N.W.*2d 224

(1987), the court found that an officer who had many years of experience in investigating accidents but had not been qualified to testify as an expert was nevertheless allowed to offer his opinion as a lay witness with respect to the point of impact. *Id.*, 415 *N.W.*2d at 228. The court concluded that the officer could testify as a lay witness because his opinion was based on his own observations of physical evidence from the accident scene and because it aided the jury in gaining a clearer understanding of the facts at issue. *Ibid.* At the same time, the court did not believe that the officer's testimony was overly dependent on scientific, technical, or other specialized knowledge. *Ibid.* *Accord Ernst v. Ace Motor Sales, Inc.*, 550 *F.Supp.* 1220, 1223–24 (E.D.Pa.1982); *Matter of Welfare of M.B.W.*, 364 *N.W.*2d 491, 494 (Minn.Ct.App.1985); *Kapinos v. Alvarado*, 143 *A.D.*2d 332, 532 *N.Y.S.*2d 416, 417 (1988).

Trooper Mutter was not presented as a qualified accident reconstruction expert. He did, however, have training and substantial experience in accident investigation, having been involved in the investigation of over 400 motor-vehicle accidents in his seven years as a state trooper. Moreover, he based his point-of-impact opinion on personal observations at the scene of the accident.

Trooper Mutter, together with his partner, Trooper Mikoljczyk, arrived shortly after the accident. For over two hours he conducted his own investigation of the scene. He observed the weather and visibility, the location of the cars, the damage to the cars, the location of Mr. Pignatelli's body, the defendant's condition, the tire marks in the grass and their direction, the uprooted grass and location of the debris, and the distance between the scuff marks in the grass and the location of defendant's vehicle. He made notes at the site, which he later incorporated into his police report. He also made a diagram incorporating his personal observations. He ordered police photographs. These observations provided sufficient evidence on which to base an opinion about the point of impact.

All these observations were disclosed to the jury. The trooper's opinion did not rest on any unknown assumptions. He was subject to extensive cross-examination, and his testimony was challenged by defendant's expert witness, Dr. Marpet. Mutter's testimony did not remain unchallenged or accepted because he was a police officer.

Accordingly, we conclude that the trial court properly admitted Trooper Mutter's point-of-impact testimony as it met both requirements of *Evid.R.* 56(1), namely, it was rationally based on what he observed at the scene of the accident and it was helpful to the jury's full comprehension of the facts in question.

### III

In his cross-petition defendant raises several issues. He contends that the trial court improperly refused to charge three supplemental requests to the jury, that Investigator Mazza was improperly allowed to testify as an expert witness, that he was denied a fair and impartial trial as a result of the improper comments and conduct of the assistant prosecutor, and that these legal errors in their aggregate deprived him of his fundamental constitutional rights. The Appellate Division found no merit in any of these claims. We agree.

### A

Defendant requested three separate and distinct supplemental charges to be given to the jury. The trial court refused to give any of the requested charges. At the close of the State's case, defense counsel informed the trial court of its intention to seek an adverse inference charge against the State for its failure to call Trooper Thomas Mikoljczyk, Trooper Mutter's partner at the scene of the accident. *State v. Clawans,* 38 *N.J.* 162, 171 (1962), provides that an adverse inference may be drawn against a party from the failure to produce a witness if (1) that party had the power to produce the witness, and

(2) the witness' testimony would have been superior to that of the witnesses who did actually testify. *See State v. Carter,* 91 *N.J.* 86, 127–28 (1982); *State v. Hickman,* 204 *N.J.Super.* 409, 414 (App.Div.1985), *certif. den.,* 103 *N.J.* 495 (1986).

We agree that the State's relationship with Trooper Mikoljczyk would satisfy the first prong of the *Clawans* decision. However, there is nothing to suggest that Trooper Mikoljczyk was in a position to offer testimony superior to that of Trooper Mutter. Unlike his partner, Trooper Mikoljczyk did not record his observations of the scene of the accident, which occurred two years before defendant's trial. Indeed, as the trial court noted in refusing to give the adverse inference charge, "since [Mikoljczk] made the report his independent recollection after two years is unlikely to be superior to the testimony of this investigating trooper who reported and testified." In addition, the trial court noted that there is nothing to suggest that Trooper Mikoljczyk would offer testimony that was contradictory to that of Trooper Mutter. Accordingly, we find that the trial court properly refused to give the adverse-inference charge.

## B

Defendant also maintains that the trial court erred when it failed to charge the jury that it could consider that if decedent's conduct was the efficient producing cause of death, defendant would be entitled to a "not guilty" verdict. As support for his requested charge, defendant notes that decedent had a blood-alcohol level of .119 at the time of his death and that Dr. Marpet, defendant's expert, testified that in his opinion decedent's car was sticking out on to the shoulder and possibly protruding into the right lane. The State argues there is insufficient evidence to support the charge.

Appropriate charges expounding the law for the jury's guidance and instruction are essential for a fair trial. *State v. Collier,* 90 *N.J.* 117, 122 (1982); *State v. Green,* 86 *N.J.* 281,

287 (1981). Nevertheless, a party is not entitled to have the jury charged in his own words. *State v. Thompson,* 59 *N.J.* 396, 411 (1971). A party is entitled only to a charge that is accurate and that does not, on the whole, contain prejudicial error. *Ibid.* As such, the test is to examine the charge in its entirety, to ascertain whether it is either ambiguous and misleading or fairly sets forth the controlling legal principles relevant to the facts of the case. *State v. Freeman,* 64 *N.J.* 66, 69 (1973); *State v. Gallicchio,* 44 *N.J.* 540, 549 (1965); *State v. Brown,* 131 *N.J.Super.* 228, 233 (App.Div.), aff'd o.b., 66 *N.J.* 146 (1974). The trial court gave substantially the Model Charge for death by auto. Model Jury Charges (Criminal), sec. 2.130, revised March 5, 1984. Reviewing the trial court's charge, we find the charge provides a "plain and clear" exposition of the law. *State v. Green, supra,* 86 *N.J.* at 288.

## C

Defendant argues that the trial court improperly failed to charge the jury that intoxication alone is insufficient to establish that defendant was operating his car recklessly under the "death by auto" statute. While "[i]ntoxication is not necessarily an element of the crime of committing death by auto, a defendant's driving while intoxicated may [by itself] support a determination of recklessness." *State v. Casele,* 198 *N.J.Super.* 462, 472 (App.Div.1985). A defendant's sobriety or insobriety is merely one of the circumstances to be considered by the jury. *See State v. Dively,* 92 *N.J.* 573, 583 n. 7 (1983) (drunk driving does not *necessarily* equate with reckless driving) (emphasis added). Accordingly, a reasonable jury may use a defendant's drunken state as evidence of his reckless driving.

## D

Defendant also submits that the trial court abused its discretion in allowing Investigator Mazza to testify as an accident-reconstruction expert in rebuttal to Dr. Marpet's prior testimony. The basis for this claim is the State's failure to

provide a report containing a summary of Investigator Mazza's anticipated testimony. Defendant claims that this violates *Rule* 3:13–3(a)(11), which declares that

> [u]pon written request by the defendant, the prosecuting attorney shall permit defendant to inspect and copy or photograph any relevant ... names and addresses of each person whom the prosecuting attorney expects to call to trial as an expert witness, his qualifications, the subject matter on which the expert is expected to testify, a copy of the report, if any, of such expert witness, or if no report is prepared, a statement of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. If this information is requested and not furnished, the expert *witness may, upon application of the defendant, be barred from testifying at trial.* (emphasis added).

The decision on whether to bar an expert's testimony under *Rule* 3:13–3(a)(11) is left to the trial court's discretion. *See, e.g., Amaru v. Stratton*, 209 *N.J.Super.* 1, 11 (App.Div.1985) (discussing parallel civil rule, *Rule* 4:10–2(d)(1)); *Clark v. Fog Contracting Corp.*, 125 *N.J.Super.* 159, 162 (App.Div.) (same), *certif. den.*, 64 *N.J.* 319 (1973). Factors that should result in permitting the expert to testify include "(1) the absence of any design to mislead, (2) the absence of the element of surprise if the evidence is admitted and (3) the absence of prejudice which would result from the admission of evidence." *Amaru, supra,* 209 *N.J.Super.* at 11; *Westphal v. Guarino*, 163 *N.J.Super.* 139, 146 (App.Div.), aff'd o.b., 78 *N.J.* 308 (1978).

At defense counsel's request, an *Evid.R.* 8 hearing was held to determine whether Investigator Mazza would be allowed to testify. The prosecutor contends that the State listed Investigator Mazza as a possible witness in its original discovery material. Furthermore, on receipt of Dr. Mark Marpet's report on May 23, 1986, the prosecutor informed defense counsel by letter dated June 16, 1986, that the State might call either Investigator Rocco Mazza or Detective Jack Hammill of the prosecutor's office as its accident-reconstruction experts and enclosed curricula vitae for each. The prosecutor also told defense counsel that "I do not have and do not expect to have a written report from either."

The trial court allowed Mazza to testify only as a rebuttal witness and limited his testimony within the parameters of Dr. Marpet's testimony. The trial court concluded that Mazza should be permitted to testify because the content of his testimony was neither surprising nor prejudicial to the opposing party and substantial justice would not be served by the preclusion of Mazza. We agree. The trial court's discretionary ruling is consistent with other courts' refusals to bar expert testimony where its contents are neither surprising nor prejudicial to the opposing party. *See Westphal, supra,* 163 *N.J.Super.* at 148; *see also Amaru, supra,* 209 *N.J.Super.* at 11–12 (noting that *Evid.R.* 56(2) permits an expert to testify on matters made known to her at trial, and using this, plus the fact that testimony should have been anticipated, permitted expert to go beyond his report when asked a question concerning a key trial issue).

### E

Defendant also contends that the trial court erred in denying his motion for a judgment of acquittal, his motion for a mistrial, and his motion for a new trial. The trial court properly denied all of defendant's motions. The Appellate Division affirmed the trial court decision, and we agree with that determination.

Under *Rule* 3:18–1, a judgment for acquittal will be granted at the close of the State's case when "the evidence [as presented] is insufficient to warrant a conviction." Clearly, there was more than sufficient evidence to warrant defendant's conviction.

Defendant also contends that the prosecutor made highly prejudicial and improper remarks during summation and that, therefore, the trial court erroneously denied his motion for a mistrial. Additionally, defendant further asserts that the prosecutor's misconduct throughout the trial unduly prejudiced him and deprived him of his right to a fair trial. Specifically, defendant finds the following flaws in the prosecutor's conduct:

(1) her reference to the title of a report filled out by Trooper Mutter, the Drinking/Driving Report; (2) her declaration, in response to defendant's accusation that she tried to hide the fact that the victim was an off-duty police officer, that she did not reveal this information because doing so would have been hearsay; (3) her comment during summation that it could be inferred from the evidence that decedent was hit while standing on the grass, an issue that defendant claims was not addressed at trial; (4) her statement that she was unaware of Trooper Mikoljczyk's presence at the accident scene despite his being named in Mutter's report; (5) her statement that she did not know what Dr. Marpet would testify about despite having his report; and (6) her statement that she had to wait for Investigator Mazza to return from vacation before she could review Dr. Marpet's report with him although, in fact, Mazza left for vacation a few days after she had received the report so that she could have talked to him before he left.

Because motions for mistrial based on misconduct should be granted only where manifest injustice would otherwise result, *see State v. DiRienzo*, 53 *N.J.* 360, 383 (1969), the trial court was correct that none of these complained of acts, even to the extent that they did constitute improper actions, warranted declaring a mistrial. This sort of determination rests within the sound discretion of the trial court and it should not be disturbed when, as in this case, there is no clear showing that the court abused its discretion or that the defendant suffered actual harm. *See State v. O'Connor*, 42 *N.J.* 502, 510, *cert. den.*, 379 *U.S.* 916, 85 *S.Ct.* 268, 13 *L.Ed.*2d 187 (1964); *State v. O'Leary*, 25 *N.J.* 104, 116 (1957); *State v. Abernathy*, 137 *N.J.Super.* 83, 86 (App.Div.1975), *certif. den.*, 69 *N.J.* 396 (1976).

A conviction will not be reversed unless the jury verdict clearly and convincingly constitutes a miscarriage of justice. *See R.* 2:10-1, 3:20-1. Evidence in this case establishes that there was no miscarriage of justice. Indeed, as the

Appellate Division recognized, even if defendant's version of the accident is accepted, a jury reasonably could have found defendant guilty of death by auto.

In conclusion, we agree with the Appellate Division with respect to the issues raised by defendant in his cross-petition. However, we disagree with the Appellate Division's conclusion that Trooper Mutter's testimony was inadmissible because he was not qualified as an accident reconstruction expert. Hence, the Appellate Division's judgment is reversed and the judgment of conviction reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.