**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2116-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ROLANDO MORRISON, a/k/a
ROLONDO MORRISON,
DANNY BOATWRIGHT,
and CORLANDO GRANT,

     Defendant-Appellant.

_____

Submitted October 7, 2020 – Decided November 2, 2020

Before Judges Alvarez and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 15-04-0591.

Joseph E. Krakora, Public Defender, attorney for appellant (Rasheedah Terry, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

PER CURIAM

Tried by a jury, defendant Rolando Morrison was convicted[1] of second-degree aggravated assault (serious bodily injury), N.J.S.A. 2C:12-1(b)(1) (count two); third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2) (count three); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count four); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count five); and fourth-degree obstruction, N.J.S.A. 2C:29-1 (count six). After the verdict, he entered a guilty plea to second-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(b) (count seven). On December 7, 2018, the trial judge merged counts two and three, and counts four and five, and imposed the following concurrent sentences: a Graves Act sentence of fifteen years subject to the No Early Release Act's (NERA), N.J.S.A. 2C:43-7.2, eighty-five percent parole ineligibility on count two, N.J.S.A. 2C:44-3(d), N.J.S.A. 2C:43-6(c), and N.J.S.A. 2C:39-4(a); a Graves Act five years subject to forty-two months of parole ineligibility on count four, N.J.S.A. 2C:39-4(a); eighteen months on count six; and five years

---

[1] The jury acquitted defendant of the first count of the indictment, second-degree attempted murder, N.J.S.A. 2C:5-1, and 2C:11-3.

2

subject to five years of parole ineligibility on count seven. Thus, his aggregate sentence was fifteen years subject to NERA. He appeals and we affirm.

Surveillance video recordings shown to the jury, taken from the outside of a Jersey City bar, captured an altercation that occurred August 31, 2014, at approximately 2:00 a.m. The victim is depicted struggling with a man wearing clothing similar to that worn by defendant moments later when he was arrested, including a dark shirt, baseball cap, white glove, and green camouflage pants. The white-gloved man is seen briefly turning his back away from the struggle and the camera, while removing an object from beneath his shirt at the waistband. After defendant turns back, the two men briefly exchange blows, but defendant holds a black object, gaining the upper hand while striking the victim repeatedly. The men, still fighting, move out of camera range for a few seconds. Only the victim reappears moments later; he takes a few steps and walks into the street towards a passing police car.

All the officers who testified at the Rule 104 hearing regarding the admissibility of the video film and at the trial were members of the Jersey City Police Department. Officer Ed Redmond said that while on patrol he heard the sound of a shot as he passed the bar, informing dispatch immediately, and turning around. When shown the video, he identified his patrol car in the upper

3

corner of the screen travelling in one direction, and then returning in the other. He also testified during the trial, adding that the victim collapsed on the hood of the vehicle.

Redmond described the victim to the jury: he was in pain, and "very uncooperative." When the victim was turned over, Redmond saw a gunshot wound to his abdomen. The victim's intestines appeared to be protruding from the wound. The victim refused to discuss the incident with the officers; none of the other bar patrons were willing to speak to police either.

Anthony Sharperson, the bar owner, testified at the Rule 104 hearing as well as at trial. On both occasions he said the exterior surveillance cameras were in good working order, although the time stamp was inaccurate. He also said that he turned the tape over to the Jersey City Police Department after the incident, and that the depiction of the sidewalk outside the bar was accurate.

The judge barred defendant from cross-examining Sharperson regarding his alleged confrontation with the victim that evening. The judge reasoned that since defendant had not provided the State with notice that he would be raising the defense of self-defense, and the purpose of admission was unclear, it would have been an improper invitation to the jury to engage in sheer speculation if he

allowed it. Although third-party liability is mentioned by counsel in passing, his focus appeared to be self-defense.

Officer Eddie Fernandez headed to the bar after receiving the dispatch. He canvassed the area for anyone "possibly fleeing[.]" Nearby, he saw defendant bending over a car. By the time Fernandez left his vehicle, defendant had crawled underneath a car. When the officer asked defendant to stand, he stood up and ran. The officers gave chase and arrested him. Fernandez collected a white and blue baseball batting-type glove from defendant. No blood was visible on either defendant or his clothing.

Lieutenant Keith Armstrong had been previously assigned to the department's "cease fire unit," which was responsible for the investigation of non-fatal shootings. Over his career, he had been involved in over one hundred such investigations, and had been trained as an officer in the use of handguns. At the scene promptly after the incident, he found two baseball caps up against the building, and a spent shell casing on the ground. Defense counsel objected to Armstrong explaining the meaning of "shell casing" because he had not been qualified as an expert. The judge overruled the objection, stating without comment from counsel, that the fact the victim was shot was undisputed. Armstrong proceeded to describe the separation process that occurs when a

bullet is fired, and the ejection of the empty shell casing. The jury was shown a photograph of the casing on the ground in front of the bar.

The State also moved into evidence four photographs of the victim's face, which are included in the appendix on appeal. They depict the victim lying in a hospital bed, his eyes swollen shut. Also moved into evidence were defendant's blue and white sneakers, and the clothes he was wearing when arrested. Additionally, the State presented the jury with enlarged still photographs taken from the video depicting the item defendant was holding.

The State presented Allison Lane, a scientist from the State Police Laboratory, who explained the forensic examination of the clothing, glove, and a cap submitted for testing, actually performed by an employee who had retired. Lane was qualified as an expert, stating she was not only familiar with the procedures employed during testing, but also with the retired scientist's examination, and independently reviewed her findings. The procedures used in her testing "were in line with . . . protocols in the laboratory." The items were then forwarded to the DNA lab because a stain on the glove was presumptive for blood, and skin cells were found inside the hat that might generate a DNA match. When tested, the clothing items traced back to defendant.

6

At the close of the State's case, defense counsel moved for dismissal pursuant to State v. Reyes, 50 N.J. 454 (1967). The judge denied the motion, concluding that despite the unusual nature of the State's proofs, entirely circumstantial evidence due to the non-cooperative victim and eyewitnesses, a reasonable jury could nonetheless convict when all inferences were drawn in favor of the State. Those proofs included the surveillance video, and the hat bearing defendant's DNA.

Defendant draws our attention to the following alleged errors:

> POINT I. THE TRIAL COURT'S EXCLUSION OF DEFENDANT'S THIRD-PARTY DEFENSE VIOLATED HIS RIGHT TO A FAIR TRIAL.
>
> POINT II. THE ADMISSION OF IMPROPER EXPERT TESTIMONY FROM LAW ENFORCEMENT OFFICERS REDMOND AND ARMSTRONG DENIED THE DEFENDANT OF HIS RIGHT TO A FAIR TRIAL.
>
> > A. Redmond's Determination That Irwin Sustained a Gunshot Wound Related To Matters That Were Beyond The Ken Of An Average Juror (Not raised below).
> >
> > B. Armstrong's Testimony About The Components Of A Bullet, The Trajectory Of A Projectile And The Landing Spot For A Spent Shell Casing Went Beyond The Ken Of An Average Juror.

A-2116-18T1

POINT III. THE COURT ABUSED ITS DISCRETION WHEN IT ADMITTED THE COMPLEX FINDINGS OF ANNETTE ESTELLO, A NON-TESTIFYING EXPERT.

POINT IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED THE CHERRY'S LOUNGE VIDEOTAPE INTO EVIDENCE AS THE STATE FAILED TO PROPERLY AUTHENTICATE THE VIDEOTAPE.

POINT V. THE ADMISSION OF CUMULATIVE AND UNDULY PREJUDICIAL PHOTOGRAPHS OF THE ALLEGED VICTIM DENIED THE DEFENDANT OF HIS RIGHT TO A FAIR TRIAL (Not raised below).

POINT VI. THE TRIAL COURT SHOULD HAVE ENTERED A JUDGMENT OF ACQUITTAL OR GRANTED DEFENDANT'S MOTION FOR A NEW [TRIAL] BECAUSE NO REASONABLE JURY COULD HAVE FOUND DEFENDANT GUILTY BEYOND A REASONABLE DOUBT.

POINT VII. THE COURT ERRED IN FAILING TO PROVIDE A CHARGE PURSUANT TO STATE V. CLAWANS, 38 N.J. 162 (1962) REGARDING THE STATE'S FAILURE TO PRODUCE THE VICTIM AS A WITNESS (Not raised below).

POINT VIII. THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY THAT IT MUST FIND DEFENDANT NOT GUILTY IF THE STATE FAILED TO PROVE ALL THE ELEMENTS OF THE SECOND-DEGREE POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE CONSTITUTES REVERSIBLE ERROR (Not raised below).

POINT IX. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED DEFENDANT TO AN AGGREGATE TERM OF FIFTEEN YEARS OF IMPRISONMENT BECAUSE THE TRIAL COURT FAILED TO FIND MITIGATING FACTORS AMPLY SUPPORTED BY THE RECORD.

POINT X. THE MATTER MUST BE REMANDED FOR RESENTENCING TO ENABLE THE COURT TO PROVIDE A STATEMENT OF REASONS FOR ITS DECISION TO APPLY THE MANDATORY GRAVES ACT EXTENDED TERM TO DEFENDANT'S CONVICTION FOR SECOND-DEGREE AGGRAVATED ASSAULT.

I.

Defendant's first point is that the judge's refusal to allow him to question Sharperson regarding the bar owner's own confrontation with the victim violated his right to a fair trial. It is undisputed that "a defendant is entitled to prove his innocence by showing that someone else committed the crime." State v. Koedatich, 112 N.J. 225, 297 (1988). Similarly, the statutory defense of self-defense, N.J.S.A. 2C:3-4, can be raised even if the interaction between defendant and the victim commenced as mutual combat. State v. Gentry, 439 N.J. Super. 57, 69-71 (App. Div. 2015). In this case, it appeared that defense counsel was arguing that the victim had "threatened a number of people" and that thus someone else could have shot him, or defendant could have acted in

9

self-defense. But, as the judge pointed out, just because the victim may have been prohibited from going back into the bar, and was aggressive that evening, does not connect the shooting with any particular confrontation other than the one defendant had with the victim. The video shown to the jury clearly depicted interactions between the victim and a person dressed in clothing similar to that worn by defendant, seconds before the victim collapsed onto the hood of the passing police car. The judge opined that to have allowed the testimony would have merely encouraged the jury to speculate. Thus, he denied the cross-examination.

The video makes clear that although anything is possible, the likelihood that a third person shot the victim, simultaneously with his continuing confrontation off-screen with the defendant, is nothing more than unfounded speculation. As the court said in Koedatich, some evidence has to be proffered linking a third party and the victim, or a third party and the crime. 112 N.J. at 300. There must be "some thread" that would enable a reasonable jury to view that third-party confrontation as having relevance to the shooting. See ibid. The evidence must rationally tend "to engender a reasonable doubt with respect to an essential feature of the State's case." State v. Loftin, 146 N.J. 295, 345 (1996) (quotations omitted).

No such evidence would be developed through the line of questioning. At trial, though not on appeal, counsel suggested self-defense as the theory that warranted cross-examination of the bar owner. Even if it had been clearly argued, nothing on the video depicting the struggle between the unarmed victim and an armed defendant justified his use of force, as required by N.J.S.A. 2C:3-4. Nothing in the video or the State's proofs suggested third-party guilt. The argument lacks merit.

## II.

Plain error is "error possessing a clear capacity to bring about an unjust result and which substantially prejudiced the defendant's fundamental right to have the jury fairly evaluate the merits of his [or her] defense." State v. Timmendequas, 161 N.J. 515, 576-77 (1999) (quoting State v. Irving, 114 N.J. 427, 444 (1989)). "[A]ny finding of plain error depends on an evaluation of the overall strength of the State's case." State v. Chapland, 187 N.J. 275, 289 (2006). The unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). Harmless errors should be disregarded by the court, even where the trial court is found to have abused its discretion in admitting evidence and failed to properly instruct the jury. See State v. Prall,

231 N.J. 567, 581, 587-88 (2018); R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . .").

At trial, defendant did not object to the admission of Redmond's testimony that the victim sustained a gunshot wound in the absence of medical evidence. On appeal, defendant objects that the "diagnosis" required it.

The argument fails because pursuant to N.J.R.E. 701, a witness may state his opinion so long as it is rationally based on his perceptions, and will assist the jury in determining a fact at issue. The admissibility of opinion evidence rests within the sound discretion of the trial judge. State v. LaBrutto, 114 N.J. 187, 197 (1989).

It bears repeating that the fact defendant was shot was not in dispute. Defendant was silent when the judge ruled on Armstrong's proposed testimony about the shell casing and observed that the occurrence of the shooting was not in dispute. The doctrine of invited error is therefore applicable. Under that doctrine, we do not review a claim of error when a party's statements or conduct were relied upon by the trial judge in reaching a decision later appealed. See Brett v. Great American Recreation, 144 N.J. 479, 503 (1996). The judge relied

on defendant's silence in making his evidentiary ruling as to Armstrong—but it applies to Redmond's testimony as well.

Even if the doctrine of invited error did not apply, plain error did not occur when the police officer described what he saw. He saw an injury in the victim's abdomen, from which the victim's intestines appeared to be protruding. Although certainly, such wounds can result from causes other than a gunshot, it was reasonable for the officer to have testified, without objection, to the sequence of events. As he was driving by the bar, he heard a gunshot, and when he returned to the scene, he immediately located an injured person. His observation in the context of what he heard, and his training and experience caused him to conclude that the injury was a gunshot. Thus, this argument has no merit. Even if error, the error was harmless.

Defendant also objects to Armstrong's testimony explaining how a bullet separates once shot out of a gun, causing the empty casing to fall to the ground. The officer had worked with the Jersey City Police Department for twenty-four years and was assigned over his career to the street crimes unit, the gang task force, and the "cease fire" unit. He had participated in over one hundred investigations and received training in handguns. The officer could have been formally qualified as an expert, able to testify regarding the relatively innocuous

information that a spent shell casing lands on the ground. The judge limited the officer's testimony to that point. The nature of this testimony was within the sphere of common knowledge of those familiar with guns.

In similar situations, the New Jersey Supreme Court has permitted lay opinion testimony, such as that of both Redmond and Armstrong, given their employment, experience, and observations. See State v. McLean, 205 N.J. 438, 459 (2011). Examples of similar scenarios found in McLean are testimony regarding whether a neighborhood is a high-crime area, an officer's observations of an accident scene, including skid marks, and an officer's interpretation of street slang. Id. at 458-59. The admission of Redmond and Armstrong's testimony did not deprive defendant of his right to a fair trial. It was nothing more than lay opinion evidence.

## III.

Defendant also contends that the court should not have admitted the testimony of the State Police laboratory serology unit scientist's discussion of the testing conducted by a retired employee. This argument lacks merit because the scientist, consistent with current caselaw, did not passively repeat the contents of the report. She stated that she was familiar with the testing protocols the retired employee followed and had independently reviewed the retired

14                                                                                    A-2116-18T1

employee's findings. Thus, her testimony that the glove tested positive presumptive for the presence of blood, and the hat contained "potential skin cells[,]" was proper. The items were sent on for further analysis.

The requirements of Crawford v. Washington, 541 U.S. 36, 68 (2004), were satisfied. As in State v. Michaels, 219 N.J. 1, 45-46 (2014), the scientist independently verified the report protocols, forming independent conclusions about the results. This argument also lacks merit.

IV.

Videotapes are treated similarly to a writing under N.J.R.E. 801(e) and therefore must be authenticated before admission. See State v. Wilson, 135 N.J. 4, 17 (1994). The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims. N.J.R.E. 901. In order to establish the foundation for admission, no hyper technical steps must be followed— rather, the testimony must establish the accuracy and correctness of the film. Wilson, 135 N.J. at 14. And as is the case with all evidence, admission of a video is subject to abuse of discretion review. See State v. Brown, 463 N.J. Super. 33, 51 (App. Div. 2020).

In this case, the judge's admission of the videotape and his decision at the close of the Rule 104 hearing were not an abuse of discretion. Sharperson's and Redmond's testimony regarding the video sufficed to authenticate it. The suggestion that because no chain of evidence was proffered, or that because Sharperson could have manipulated the tape in some fashion, it should not have been admitted, is speculative. The time stamp discrepancy was explored by defense counsel; it was the only issue with the video. Accordingly, the judge did not abuse his discretion by admitting it.

V.

Defendant argues that either his Rule 3:18-2 motion for acquittal, or his motion for a new trial, should have been granted. Because no actual shooting is depicted on the video, the victim refused to cooperate, no eyewitness spoke with police, and defendant claims the video is allegedly insufficient to establish defendant's possession of a gun, even drawing all inferences in favor of the State, no reasonable jury could have convicted defendant.

After conviction, defendant further claims, given that all proofs were circumstantial, the interests of justice required dismissal of the charges. That the judge commented that he could not have found the object seen in defendant's

A-2116-18T1

hand was a gun did not mean a reasonable jury could not reach a contrary conclusion. There was sufficient circumstantial evidence for them to convict.

Defendant was seen on the video, holding a black object, apparently pistol whipping the victim, and was arrested moments later in the same clothes. A gunshot was heard, admittedly off camera, while the two men struggled. When police arrived moments later, the victim had a gunshot wound to his abdomen. A spent shell casing was found at the scene, corroborating that a shot was fired. Defendant was located hiding under a nearby car, and when told by police to walk toward them, he took off running.

The trial court is bound pursuant to rule, to give the benefit of all favorable inferences to the State. Viewing the circumstantial evidence in this case in that light, it is clear that a reasonable jury could find guilt of the charges beyond any reasonable doubt. See Rule 3:18-1; State v. Reyes, 50 N.J. 454 (1967).

A motion for a new trial is granted pursuant to Rule 3:20-1 where "required in the interest of justice." These motions are addressed to the discretion of the trial judge and are not reversed unless a clear abuse of that discretion has been established. State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000). We merely determine whether the court could have made its decision on sufficient credible evidence present in the record. That certainly

appears to be the case here. Enlarged stills were presented to the jury taken from the video showing an object in defendant's hand. From these photographs, a reasonable juror could readily conclude defendant was holding a gun. At trial at least, no one was contesting that the victim had been shot. No manifest denial of justice occurred; the judge's decision was reached on sufficient credible evidence present in the record.

## VI.

Defendant also contends that the judge should have found mitigating factor seven, lack of criminal record, N.J.S.A. 2C:44-1(b)(7). The judge did not err in his findings of aggravating and mitigating factors. As indicated in the presentence report, in addition to having an extensive juvenile history, this thirty-eight-year-old defendant in 2018 had been previously convicted of eight indictable offenses, including federal offenses, and five disorderly persons matters. In 2004, defendant was sentenced for a federal offense involving the unlawful transport of firearms to 110 months imprisonment. Thus, to say he was offense-free is not within the intent of the statute. If he was in federal custody, the fact he was law-abiding during that time does not support mitigating factor seven. He was charged in 2011 with attempted murder and related offenses that mirror these charges.

18

VII.

Defendant makes a series of arguments that do not warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). We touch upon them briefly.

Defendant asserts that the admission of the four photographs of the victim's face denied him his right to a fair trial because they were too prejudicial. Those photographs are included in the appendix. They simply depict the victim's face, his eyes swollen shut. They would not inflame the passions of a jury. Their admission did not prejudice defendant's right to a fair trial.

Defendant's argument that the judge should have given the State v. Clawans, 38 N.J. 162 (1962), charge also lacks merit. A fundamental requirement for Clawans is that the victim be unavailable to the defendant. The victim was equally available to both parties, making the Clawans inference unavailable. Id. at 171.

Defendant also contends that the judge erroneously instructed the jury. The State provided a copy of a CD, however, created from the courtroom recording to refute the misstatement in the transcript. The judge, tracking the model jury charge, actually said that if the State failed to prove beyond a reasonable doubt any elements of the offense, the jury must find defendant not guilty. See Model Jury Charges (Criminal), "Possession of a Firearm With a

19

Purpose to Use It Unlawfully Against the Person or Property of Another (N.J.S.A. 2C:39-4(a))" (rev. Oct. 22, 2018).[2]

Finally, defendant argues that the matter should be remanded for resentencing so that the court could provide a statement of reasons regarding his decision to apply the Graves Act extended term to defendant's conviction for second-degree aggravated assault. We disagree that the judge did not do so; the judge gave a detailed and thorough exposition as to his imposition of sentence overall, including the mandatory Graves Act term.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] The court gave Model Jury Charges (Criminal), "Possession of a Firearm With a Purpose to Use It Unlawfully Against the Person or Property of Another (N.J.S.A. 2C:39-4(a))" (2003), which was revised on October 22, 2018 after defendant's trial. The 2018 revision did not, however, alter the content of the portion of the jury charge disputed by defendant.

A-2116-18T1