164 N.J. Super. 457 (1977)
397 A.2d 330
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT POLK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 21, 1977.
Decided April 28, 1977.
*460 Before Judges FRITZ, ARD and PRESSLER.
Mr. Stanley C. Van Ness, Public Defender, attorney for the appellant (Mr. Donald T. Thelander, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. William F. Hyland, Attorney General, attorney for the respondent (Mr. Julian Wilsey, Deputy Attorney General, of counsel and on the brief; Mr. Lowell Espey, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant was tried by a jury and convicted of first degree murder of Marcella Bonnie Melvins and atrocious assault and battery against Sharod Melvins.
He appeals the murder conviction and asserts:
I. The trial judge committed plain error by not instructing the jury that voluntary intoxication can operate to reduce the degree of culpability from first to second degree murder.
II. The judge erred in denying defense counsel's request for an adjournment to have defendant examined by a psychiatrist.
III. The admission into evidence of S-23, a photograph of decedent, constituted reversible error.
IV. The prosecutor's comments in summation equating provocation with justifiable homicide constituted reversible error.
V. The imposition of a mandatory life sentence violates the Fifth and Sixth Amendment rights of defendant.
VI. The entire trial was so infected with error as to mandate a finding that defendant did not receive a fair trial.
The facts pertinent to the issue of intoxication are essentially undisputed. On the morning of the day of the killing, defendant and Leon Jones decided not to go to work and began drinking beer at the Jones' residence at about 9 A.M. Just prior to arriving at the Jones' residence defendant and an unidentified young lady shared a marijuana cigarette. The remainder of the morning was spent at various residences *461 drinking beer and wine. The record is not precise as to the exact amount of alcoholic beverages consumed by defendant; however, unquestionably, it was substantial. An indication of how much was consumed is found in the testimony of Dr. Raymond Schiffman who performed the autopsy on the deceased. He testified the blood alcohol concentration was 0.158, indicating she was definitely intoxicated. Obviously the amount of alcohol consumed by decedent is not conclusive proof of defendant's consumption; however, the fact that she did not join the party until about 1 P.M. is some indication of the amount of alcohol consumed by all.
Detective Matreale testified he could smell alcohol on defendant's breath at about 4 P.M., some two hours after the killing. Although he wouldn't characterize defendant's condition as intoxicated, his testimony was not unequivocal.
Q Now, did he seem to be intoxicated at the time?
A No, I wouldn't say so.
Q Did he seem  could you tell whether he had any alcohol?
A Oh, you could smell alcohol on his breath, yes.
Q But you, you determined that he wasn't, in any way, wasn't intoxicated?
A I wouldn't call it intoxicated.
Q His actions, were they that of a sober person?
A I would say so, he was walking on his own free will, talking, sitting down.
Unquestionably, the jury had a basis for determining that this testimony, in light of all the other testimony concerning drinking, was less than accurate. Moreover, in evaluating the effect of the alcoholic beverage consumed by defendant on his mental state, the jury had a right to consider his overall conduct. They may have concluded his state of intoxication was substantial in light of his irrational conduct. Without reference to his conduct with decedent, the jury also had evidence that he hit the baby, Sherod Melvins, with his fist and then literally threw the baby down onto the porch. The drinking was further corroborated by Timothy McCarthy, an investigator of the Camden County Prosecutor's *462 Office, who arrived at the scene of the killing at about 4 P.M. He observed beer cans strewn about the floor.
The question to be decided by the trial judge, faced with a decision as to whether an instruction should be given the jury on the effect of voluntary intoxication, is not whether in fact defendant was intoxicated but whether a reasonable jury might so find. State v. Frankland, 51 N.J. 221 (1968).
The influence of liquor is not a defense to the crime of murder in the second degree and has no bearing on the guilt or innocence of defendant for that crime. However, where as here, the thesis of the State's case is that defendant was guilty of murder in the first degree, it is incumbent upon the State to prove beyond a reasonable doubt that defendant in fact performed the mental operations necessary to raise a murder from second degree to first degree. State v. Gardner, 51 N.J. 444, 457 (1968). In State v. Maik, 60 N.J. 203 (1972) the late Chief Justice Weintraub stated:
* * * [T]he voluntary use of liquor or drugs has been held to be relevant in determining whether the defendant in fact performed the mental operations necessary to raise a murder from second degree to first degree. But the influence of liquor or drugs thus voluntarily taken, no matter how pervasive that influence may be, will not lead to an acquittal. It cannot reduce the crime below murder in the second degree, and this because of the demands of public security. * * * [at 215]
Normally, where there has been testimony in the case that indicates the consumption of alcoholic beverages by defendant prior to the time he is alleged to have committed the first degree murder, an instruction will be given the jury indicating the fact that voluntary intoxication is not an absolute defense but may be considered by the jury in determining whether the intoxication interfered with the performance of the mental operations necessary to raise a murder from second degree to first degree. State v. Maik, supra.
The defendant did not request the judge to so instruct the jury, and no objection was made on the failure *463 so to instruct. The question before us is whether the judge should have charged the jury with respect to voluntary intoxication, and if so, whether the failure to so instruct constitutes plain error. R. 2:10-2.
The question of defendant's consumption of alcoholic beverages permeated this entire trial. Whatever the defense, among other issues presented to the jury was the issue of whether defendant was guilty of second degree murder or first degree murder. Under the circumstances, defendant was entitled to have the law of voluntary intoxication presented to the jury.
In State v. Frankland, supra, 51 N.J. at 223-224, the Court in discussing the question of whether a charge on intoxication was appropriate said:
* * * Surely under these circumstances the jury was entitled to be instructed on the effect of a finding by them that the defendant committed the act but did not know what he was doing. The trial judge was well within his discretion in charging on a question of law raised by the evidence in the case, even though the instruction was not requested by either party. It was in the interest of justice to give to the jury for their guidance the applicable law on this subject placed before them by the evidence, and the trial court did not err in so doing. [Footnote omitted]. State v. Sawyer, 365 S.W.2d 487, 495 (Mo. Sup. Ct. 1963). Indeed, had the trial judge failed to charge on this evidence of intoxication, the defendant well might argue that such failure was reversible error despite the lack of a request to so charge. See People v. Kent, 10 A.D.2d 662, 196 N.Y.S.2d 154 (App. Div., 4th Dept. 1960).
In our view, the failure to so instruct the jury was clearly capable of producing an unjust result and constituted plain error requiring a reversal and remand for a new trial.
We note, parenthetically, that a determination by the judge that the charge should be given does not mean the State must assume the burden of proof that defendant was sober. To the contrary, inasmuch as normality and the possession of ordinary faculties is the common situation, intoxication has been held to be an affirmative defense. One who asserts the defense, i.e., a prostration of his faculties *464 by intoxication to the degree that he is incapable of forming an intent, must bear the burden of establishing that fact by a fair preponderance of the evidence. State v. Roscus, 16 N.J. 415, 426-427 (1954). Cf. State v. Maik, supra.
Having remanded the matter for a new trial, we need not consider the remaining assertions except the admissibility of the photograph marked S-23 in evidence. Except for the question concerning the photograph, we are satisfied the remaining contentions are without merit. S-23 in evidence is a photograph of decedent taken shortly after the crime indicating a featureless face covered with blood. It is unquestionably gruesome and potentially inflammatory. The State argued, and the judge admitted it on the theory that the photograph indicated the severity and intensity of the attack and was corroborative of the State's contention that the killing was willful, deliberate and premeditated.
The admissibility of photographs of the victim rests in the discretion of the trial court, and the exercise of that discretion will not be reversed in the absence of a palpable abuse of discretion. State v. Thompson, 59 N.J. 396, 420 (1971). We are also cognizant that in a case of this nature a photograph of the injuries may be probative as to the severity of the beating, and as indicated, with respect to the degree of guilt. State v. Mulero, 51 N.J. 224, 229 (1968). However, since this matter will be retried, we recommend the photograph not be used unless the trial judge, after a clear and precise statement from the prosecutor as to its probative value, concludes that the other evidence as a whole does not adequately demonstrate the facts sought to be proved by the photograph. To argue that it is corroborative or cumulative may not be sufficient to outweigh its prejudicial potentiality in light of other evidence which the judge might conclude is more than sufficient to support the State's thesis. In weighing the factors pertinent to the admissibility decision, the court might consider the testimony of eye witnesses, testimony of the medical examiner, the contents of an *465 autopsy report or any other evidence which has a bearing on the purpose or purposes suggested to warrant the admissibility of the photograph. In the event the court deems the photograph admissible, subject to technical limitations, we suggest the photograph be reproduced in black and white in order to reduce its potential for prejudice.
Reversed and remanded for a new trial.