983 A.2d 1177 (2009)
411 N.J. Super. 35
STATE of New Jersey, Plaintiff-Respondent,
v.
R.T., Defendant-Appellant.
DOCKET NO. A-1131-06T4.
Superior Court of New Jersey, Appellate Division.
Submitted October 7, 2009.
Decided December 16, 2009.
*1178 Yvonne Smith Segars, Public Defender, attorney for appellant (Michael Confusione, Designated Counsel, of counsel and on the brief).
Anne Milgram, Attorney General, attorney for respondent (Johanna Barba Jones, Deputy Attorney General, of counsel and on the brief).
Appellant filed a pro se supplemental brief.
Before Judges AXELRAD, SAPP-PETERSON and ESPINOSA.
The opinion of the court was delivered by
AXELRAD, P.J.A.D.
Defendant was convicted, after a trial, of multiple counts of first-degree aggravated sexual assault and one count of second-degree endangering the welfare of a minor. In this appeal we consider primarily whether defendant's right to a fair trial was prejudiced by the court charging the jury with intoxication as possibly negating an element of the crime, over defendant's objection. Finding error, we reverse and remand for a new trial.
The jury heard testimony that defendant is the uncle of L.T. and that he gained custody from L.T.'s mother in 1998, when the boy was four years old. In 2004, ten-year-old L.T. disclosed defendant's recurring sexual abuse of him over the preceding six years.
L.T. testified that beginning when he was between four and five years old, defendant sexually assaulted him by either probing him digitally or by inserting his penis into L.T.'s anus. According to L.T., defendant would frequently give him "Nyquil and pills" even when L.T. was not sick, to get L.T. to fall asleep quickly. When L.T. would refuse to take the medicine, defendant would threaten to beat him and, in fact, did beat him for refusing on several occasions. After L.T. fell asleep, defendant would penetrate L.T. anally, which L.T. would sometimes witness upon waking up, but he more often experienced through the pain he felt the next morning as well as through his inability to walk or go to the bathroom. L.T. did not report the incidents to anyone while they were occurring because defendant had threatened to kill him if he ever told anyone.
L.T. returned to his mother's home in May 2003. In 2004, L.T. attempted to anally penetrate his younger brother. When asked on May 30, 2004 why he had done that, L.T. informed his mother that *1179 defendant had been "sexually touching [him] for the past seven to eight years." His mother reported this information to the police and the Division of Youth and Family Services (DYFS).
That same day, Investigator Asha Richards of the Camden County Prosecutor's Child Abuse Unit conducted a videotaped interview of L.T., wherein he related how he was drugged and sexually abused by defendant. The first reference to alcohol occurred in the following colloquy, in the context of the investigator's follow-up question to L.T., who had explained that he did not previously report the abuse to his mother because he was frightened of his uncle:
Q. Okay what makes you think he would hurt you?
A. Because he drinks a lot of beer and he just sometimes hit me for no reason sometimes.
L.T. also commented that defendant would threaten to punch or kill people "when he's drunk" and it would embarrass L.T. when they were "at parties [and defendant] would drink a lot of beer and he would say that to his friends."
On June 2, 2004, defendant appeared at the Camden County Prosecutor's Office and after waiving his Miranda[1] rights in writing, was interviewed by Investigator John Hunsinger and Sergeant Aida Marcial. Defendant denied the allegations against him. Defendant then agreed to submit to a computer voice stress analyzer (CVSA). Defendant was informed that the test indicated his answers to the questions of whether he had digitally and anally penetrated L.T. were deceptive.
According to Inv. Hunsinger, defendant again denied the allegations and then went on to say that "he's got a drinking problem" and "if he had done these things it would have occurred when he was drinking"; "if [L.T.] said it was [true,] if it happened then it probably happened"; and "[i]f it happened it would happen at nighttime because that's when ... he would be drinking."
Defendant then consented to an audiotaped statement and after again waiving his Miranda rights, answered a variety of questions from Inv. Hunsinger and Sgt. Marcial, including the following:[2]
Q. [W]e're talking about some allegations that [L.T.] had made against you is that correct?
A. Yes.
Q. In your own words tell us about these allegations?
A. I'm suppose to had um had sex um, sexual intercourse with [L.T.] I was touching his behind and private parts and results of me probably drunk, of me drinking and things that I'm very sorry for this happening and I think that is a very sick thing to do. And that a person like me would need counseling, I maybe need counseling to do something like this.
Q. You feel as though you drinking problem?
A. Yes I do.
Q. How long have you been drinking?
A. I've been drinking for approximately 15 to 20 years.
Q. How often would you drink?
A. Oh, um often, I drink beers, cans of beers and also I drink between 4 to 8 beers a day.
Q. And is that usually during the day or at night time?

*1180 A. Toward the evening, like mid day toward the evening.
Q. Would you considered yourself to get drunk or a nice buzz?
A. Well I think it be a buzz but at times it must be [half] way drunk to sometime to that of that of that I'm (inaudible) got drunk.
Q. Um, you indicated that you had ah sexual intercourse with [L.T.]?
A. I might have had sexual intercourse with him, yeah. I really can't remember so I might have been very intoxicated at the time.
Q. What leads you to believe that may have had sexual intercourse with [L.T.], if you can't remember?
A. Cause it's going to be a possibility of me doing that but like I said but being drunk remember but if he recalls then I must did.
Q. You know how many times this happened, or may have happened?
A. I can not recall at this moment.
Q. Do you ever, have you helped [L.T.] go to bathroom at night?
A. Many times.
Q. And how would you help him?
A. That. Ah how would I help him, I would um take, walk him to the bathroom and pull his um pajamas down and (inaudible) put his hands and my hand may touch his penis to make sure it aim to the toilet [bowl].
Q. Would these be nights when your intoxicated?
A. Yes.
....
Q. Um at any time do you recall when you were in the bathroom with him and he had his pants down do you recall either inserting your penis into his butt or finger?
A. I don't recall that.
Q. Possible that it may have happened?
A. Very possible, yes.
Q. Why do you say very possible?
A. I was drinking and something sick like that happened so, yeah I feel it very possible (inaudible).
....
Q. Ok, do you think in your recollection that these things happened at night or during the day?
A. At night.
Q. And why would that be?
A. While I'm drinking.
....
Q. But then you keep saying you don't recall but you already it's a possibility that you did it. Are you saying you can't recall as an excuse?
A. No I'm not. I'm saying I can't recall because I don't remember it but the possibility if I was drinking it could've happened.
....
A. ... I have no recognition of it[.] I still believe that it's false but since everything still coming up saying I did so I guess I did it but I am truly, truly sorry from the bottom of my heart.
....
Q. Hold on for a minute. Ok. Ok people do not admit to things that they do not do. Now earlier you said that there's a possibility that you could've done this because you were drunk.
A. (Inaudible)
Q. Ok explain yourself.
A. I'm, I'm sorry for what I have done to [L.T.] the touching of his buttock and fingers being on his buttock and I'm sorry for doing it. I, I, I still can't picture myself doing it but I *1181 must have did and I apologize for doing it.
....
Q. Ok alright, alright. And, and inserting your penis in his, in his butt is that what you're explaining?
A. I don't remember doing that but if I did, yes I'm sorry that too.
Defendant also indicated that the last time he may have molested L.T. was in June 2003, and that it may have happened "several times." Defendant was then arrested.
Defendant was indicted and charged with two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(1) (counts one and two); two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(7) (counts three and four); and one count of second-degree endangering the welfare of a minor, N.J.S.A. 2C:24-4a (count five).
The court denied defendant's motion to suppress his statements to the police. The court also entered an order granting the State's motion to use the videotaped statement of L.T. recorded the previous year when L.T. was ten years old, pursuant to N.J.R.E. 803(c)(27). Among other discovery orders, the court denied defendant's motion for the release of L.T.'s prescription records and granted the State's motion to exclude DYFS records relating to L.T.'s mother.
Defendant testified on his own behalf. He denied giving L.T. Nyquil and vehemently denied committing the offenses against the child. Defendant testified that during the pre-interview with the police, which was not recorded[3], he denied the charges, during which the suggestion of alcohol use was first raised by Inv. Hunsinger. Defendant explained that because he was scared and felt threatened, he simply repeated what the officers said to him and thus he was pressured into stating he committed the acts while intoxicated, even though he did not commit any of the sexual offenses and was not drunk at the time.
As an example, defendant provided the following description of what occurred with the investigators prior to the audiotaping:
A. When I went in there [Inv. Hunsinger] told me the allegations and he read some of [L.T.'s] statements to me and I couldn't believe to hear this. So he seen how I got really excited, you know, couldn't believe this. And so the way he was talking to me, telling me that this is happening....
He sat up there and told me why would I do something like this to a child? He told me a child wouldn't lie, just making this up. I told him what happened probably ... his mother is making him do this. He's telling me it's not so. He's telling me reading everything that the child said and tell me I was wrong. Say that you did this, you know. This is what you did. Just, come on let's get this over with.
....
A. I just really couldn't believe they would say this to me. I would never do nothing like that to a child, a boy, especially my own nephew. I kept telling them how I love kids. I love him. I want everything for him, the best. I would never do nothing like that. He said, come on, tell the truth. Tell the truth. You did this. Let's get this over with. You did it. He ... threatened me about the years I'm going to prison. You have to prove it to the jury. You have to prove it to the jury.

*1182 ....
[Defense]: Now, who raised the possibility of your drinking to mean that it might have happened? When did that issue first come up?
A. It happened from Lt. Hunsinger... before he start[ed] taping. He kept telling me that I was drunk.
....
[Prosecutor]: You brought up the notion of you being drunk because you needed an excuse, right?
A. No.
Defendant also stated that on numerous occasions during the course of the taping, he kept repeating what Inv. Hunsinger told him. For example:
[Defense]: And during the course of the taping, how did that go in terms of what the investigators were saying to you or doing to you?
A. They just had me so scared. I never been in this type of position before. And the way ... they was talking to me and have me thinking I was drinking. I was drunk, which didn't take place. And so they just had me so I just was like saying what they told me.
....
[Prosecutor]: So when asked if you had placed your penis or your fingers in [L.T.'s] behind, you answer[ed] probably several times.
A. Ma'am, I was scared. The way the man was threatening me about the years in prison and I was just basically repeating basically what he was saying to me.
In summation, the defense took the position that defendant did not commit the offenses and focused primarily on seeking to impugn the credibility of L.T. and his mother, including noting inconsistencies in the child's testimony and her conviction for child endangerment. Counsel also commented generally on the problems inherent in the police interrogation that was only partially audiotaped and noted Hunsinger's suggestion to defendant that he was drunk. An intoxication defense was not asserted explicitly or implicitly.
At the conclusion of the trial on April 13, 2006, defendant was found guilty on all counts. He was later sentenced to an aggregate twenty-five year prison term, with an 85% period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.
Defendant appeals, raising the following arguments through counsel:
POINT I
THE TRIAL COURT ERRED IN REFUSING TO SUPPRESS DEFENDANT'S STATEMENT TO THE POLICE BECAUSE CONFRONTING DEFENDANT WITH THE UNRELIABLE "COMPUTERIZED VOICE STRESS ANALYZER" DEPRIVED SUBSEQUENT STATEMENTS OF THEIR VOLUNTARINESS.
POINT II
PERMITTING THE JURY TO HEAR THE VIDEOTAPED INTERVIEW OF THE CHILD, THE "FRESH COMPLAINT" RELAYED BY THE MOTHER, AND TESTIMONY FROM THE CHILD'S PHYSICIAN AS WELL AND THEN PERMITTING THE JURY TO TAKE THE VIDEO TAPE WITH THEM INTO THE DELIBERATION ROOMEXCEEDED N.J.R.E. 803(C)(27) AND VIOLATED DEFENDANT'S RIGHT TO CONFRONT THE WITNESSES AGAINST HIM.
POINT III
THE TRIAL COURT ERRED IN CHARGING INTOXICATION OVER DEFENDANT'S OBJECTION.
POINT IV
THE TRIAL COURT ERRED BY DENYING DEFENDANT AND HIS *1183 COUNSEL ACCESS TO ALL THE DYFS RECORDS REGARDING L.T.'S MOTHER AND THE CHILD'S PHARMACEUTICAL RECORDS.
POINT V
THE PROSECUTOR'S COMMENTS DURING TRIAL DENIED DEFENDANT A FAIR TRIAL.
POINT VI
DEFENDANT'S SENTENCE IS IMPROPER AND EXCESSIVE.
Defendant asserts the following arguments in a pro se brief:
POINT I
Defendant was denied effective counsel due to counsel's failure to allow or put defendant[']s witnesses on [the] stand, to testify for the defendant, and when counsel refused to obtain lab reports, as well [as] failing to present mitigating factors during sentencing.
POINT II
Defendant was denied a fair hearing due to prosecutorial misconduct.
POINT III
The defendant['s] sentence is illegal and unconstitutional[.]
POINT IV
Defendant's sentence must be set aside due to police using trickery and co[e]r[c]ive means to obtain a confession, and making a witness out of the defendant, thereby making defendant a witness against him self.

I.
We discern no error in the trial court's conclusion that the State met its burden of demonstrating that defendant's statement was freely and voluntarily given after a knowing and intelligent waiver of his Miranda rights, and that presentation of the CVSA result neither rendered the subsequent statement involuntary nor equated with the creation of or confrontation with false evidence. Accordingly, defendant's motion to suppress was properly denied. The totality of the circumstances surrounding defendant's statement demonstrates beyond a reasonable doubt that defendant's will was not overborne. See State v. Galloway, 133 N.J. 631, 654, 628 A.2d 735 (1993). Moreover, the specific use of the voice stress analyzer to point out to defendant that it appeared he was not being entirely candid in his denial of the allegations, does not rise to the level of trickery by resorting to fabricated evidence of the type that we disapproved in State v. Patton, 362 N.J.Super. 16, 31-49, 826 A.2d 783 (App.Div.), certif. denied, 178 N.J. 35, 834 A.2d 408 (2003), even though a CVSA is not always reliable and is inadmissible at trial.

II.
Appropriate and proper jury charges are essential to a fair trial. State v. Savage, 172 N.J. 374, 387, 799 A.2d 477 (2002). The most critical part of any jury instruction is an explanation of the applicable law, which, in a criminal trial, includes "an explanation of the elements of the offenses with which the defendant is charged, any applicable defenses and the State's burden of proving the defendant's guilt beyond a reasonable doubt." State v. Walker, 322 N.J.Super. 535, 546, 731 A.2d 545 (App.Div.), certif. denied, 162 N.J. 487, 744 A.2d 1209 (1999). As the charge constitutes "a road map to guide the jury, ... without an appropriate charge a jury can take a wrong turn in its deliberations." State v. Martin, 119 N.J. 2, 15, 573 A.2d 1359 (1990).
Voluntary intoxication is a defense to a purposeful or knowing crime, including those offenses with which defendant was charged. N.J.S.A. 2C:2-8a; State v. Mauricio, 117 N.J. 402, 418, 568 *1184 A.2d 879 (1990); State v. Cameron, 104 N.J. 42, 52-53, 514 A.2d 1302 (1986). "The question to be decided by the trial judge, faced with a decision as to whether an instruction should be given the jury on the effect of voluntary intoxication, is not whether in fact defendant was intoxicated, but whether a reasonable juror might so find." State v. Polk, 164 N.J.Super. 457, 462, 397 A.2d 330 (App.Div.1977) (citing State v. Frankland, 51 N.J. 221, 238 A.2d 680 (1968)). "A jury issue arises only if there exists a rational basis for the conclusion that defendant's `faculties' were so `prostrated' that he or she was incapable of forming an intent to commit the crime." State v. Mauricio, supra, 117 N.J. at 418-19, 568 A.2d 879; accord, State v. Cameron, supra, 104 N.J. at 54, 514 A.2d 1302. As our Supreme Court stated:
[I]t is not the case that every defendant who has had a few drinks may successfully urge the defense. The mere intake of even large quantities of alcohol will not suffice. Moreover, the defense cannot be established solely by showing that the defendant might not have committed the offense had he been sober. See Final Report of the New Jersey Criminal Law Revision Commission, Vol. II, Commentary (1971) at 68. What is required is a showing of such a great prostration of the faculties that the requisite mental state was totally lacking. That is, to successfully invoke the defense, an accused must show that he was so intoxicated that he did not have the intent to commit an offense. Such a state of affairs will likely exist in very few cases.
[State v. Cameron, supra, 104 N.J. at 54, 514 A.2d 1302 (quoting State v. Stasio, 78 N.J. 467, 495, 396 A.2d 1129 (1979) (Pashman, J., concurring and dissenting)).]
Recognizing that intoxication must be of "an extremely high level" in order to qualify as a defense, the Court in Cameron articulated the following factors relevant to the issue:
the quantity of intoxicant consumed, the period of time involved, the actor's conduct as perceived by others (what he said, how he said it, how he appeared, how he acted, how his coordination or lack thereof manifested itself), any odor of alcohol or other intoxicating substance, the results of any tests to determine blood-alcohol content, and the actor's ability to recall significant events.
[Id. at 54, 56, 514 A.2d 1302.]
Thus, for example, the victim's testimony that defendant was drunk and the defendant's statement that she felt "pretty intoxicated," "pretty bad," and "very intoxicated," were considered by the Court to be "no more than conclusory labels, of little assistance in determining whether any drinking problem produced a prostration of faculties." Id. at 56, 514 A.2d 1302. In concluding the trial court correctly refused defendant's request to charge intoxication, because the evidence was insufficient to justify submission of the intoxication issue to the jury, the Court considered the following evidence and conducted the following analysis:
Ordinarily, of course, the question of whether a defendant's asserted intoxication satisfies the standards enunciated in this opinion should be resolved by a jury. But here, viewing the evidence and the legitimate inferences to be drawn therefrom in the light most favorable to defendant, the best that can be made of the proof of intoxication is that defendant may have been extremely agitated and distraught. It may even be that a fact-finder could conclude that her powers of rational thought and deductive reasoning had been affected. But there *1185 is no suggestion in the evidence that defendant's faculties were so prostrated by her consumption of something less than a pint of wine as to render her incapable of purposeful or knowing conduct. The trial court correctly refused defendant's request.
[Id. at 57, 514 A.2d 1302.][4]
Furthermore, a charge to which a defendant objects should be given "only where the facts in evidence `clearly indicate' the appropriateness of that charge." State v. Savage, supra, 172 N.J. at 397, 799 A.2d 477 (citing State v. Choice, 98 N.J. 295, 298, 486 A.2d 833 (1985)).
Here, during the charge conference the court discussed the possibility of charging the jury with intoxication, noting that defendant's statement at the prosecutor's office included a claim that he was intoxicated during the sexual assaults, which could potentially negate "the knowing aspect of the charges." Defense counsel vehemently opposed this instruction being given. He informed the court that he had consulted with defendant, reviewed the jury instruction with him, and defendant did not want that charge to be given to the jury. Defense counsel took the position that intoxication was not a defense in the case and, when asked to elaborate, stated that his client testified that he did not commit the acts but the police cajoled him into stating he committed the acts while intoxicated. Defense counsel explained that his strategy hinged on a denial of the charges and painting them as incredulous and the result of unfounded allegations by L.T. and his mother, not on establishing a mental excuse.[5] He implored the court that "putting that [intoxication] defense out there... really flies in the face of the way we presented the case in terms of ... my client's testimony during the course of his Direct examination and Cross-examination of the other witnesses as well who investigated him and interrogated him on that issue." Moreover, it "works a prejudice against [defendant's] case." The State, after initially objecting, indicated it wished the court to give the charge.
The court charged intoxication over defendant's objection, reasoning:
I believe that the charge is appropriate and I think a reasonable jury hearing *1186 that charge could find that intoxication negates an element of the offense. And I think intoxication is a part of this case.
Especially, given the statements that were made by [defendant] during the Miranda Hearing, which I read those statements into the record from the transcript that dealt with his using an intoxicant, that is beer, over a period of time and the amount of beer that was consumed by him.
So, I think a reasonable jury could find that that charge should, in fact, be given based on the evidence that has been presented in this case.
....
There is just an abundance of information regarding alcohol. Again, as the prosecutor has indicated in the statement ofthe taped statement of the victim in this case along with more importantly the statement that the defendant made, his own statement he made while he was being questioned by the authorities.
So, I believe that there is certainlyI believe it would be error not to include the intoxication charge. And I believe even if both the State and the defense objected to the charge, I think sua sponte that the Court has a responsibility in the interest of justice to read that chargeto charge the jury with regard to that particular charge.
There is ample information contained in the record that would justify the Court doing it.
It is evident from the record that the trial judge gave a great deal of thought to the intoxication charge and sincerely believed under the facts of the case it would be error not to sua sponte give the instruction, despite defendant's objection. Nevertheless, we are in agreement with defendant that the court's charging the jury on intoxication warrants reversal and remand of this case.
The facts of the present case do not clearly indicate a rational basis for the conclusion that defendant suffered from such a "prostration of faculties" as to render him incapable of forming the requisite mental state to commit the crimes. See, e.g., State v. Savage, supra, 172 N.J. at 397, 799 A.2d 477; State v. Mauricio, supra, 117 N.J. at 418-19, 568 A.2d 879. Defendant was charged with conduct occurring on diverse dates from July 15, 1997 through June 30, 2003. Here, there were just vague references to drinking contained in defendant's statement to the police and L.T.'s statement to the investigator, i.e., "conclusory labels, of little assistance in determining whether any drinking produced a prostration of faculties." State v. Mauricio, supra, 117 N.J. at 419, 568 A.2d 879 (quoting State v. Cameron, supra, 104 N.J. at 56, 514 A.2d 1302). Considering the Cameron factors, during the requisite time frame there was no evidence of defendant's blood-alcohol level, the amount of alcohol he had consumed or over what period of time he had been drinking, or that he smelled of alcohol or had any other physical manifestations of intoxication. It is not even suggested that defendant had imbibed large quantities of alcohol. All the record contained were defendant's generalized statements to the officers that he had a longstanding drinking problem, often drank four to eight beers a day from mid-day through the evening, and would get from a "buzz" to "drunk." Moreover, defendant's only proof as to his inability to recall significant events and the correlation of the offense and his intoxication were his statements that there was a possibility he could have committed the offenses because he was drunk but could not remember so he must have been intoxicated at the time, interspersed *1187 with a denial of the events. Furthermore, L.T. merely corroborated that defendant drank a lot of beer and got drunk at parties. This evidence would be entirely insufficient to establish the extremely high level of intoxication required by the Court to qualify as a defense as well as to create a jury question on defendant's intoxication. See State v. Mauricio, supra, 117 N.J. at 419, 568 A.2d 879 (citing cases in which evidence of intoxication was deemed sufficient to present a jury question)[6]; State v. Cameron, supra, 104 N.J. at 54-57, 514 A.2d 1302 (same)[7].
Not only did the facts not clearly indicate the appropriateness of the intoxication charge, but the instruction impermissibly interfered with defendant's chosen trial strategy as clearly articulated to the court during the charge conference. Our courts have expressed a general need to refrain from interfering with defense counsel's strategy.
In State v. Perry, 124 N.J. 128, 163, 590 A.2d 624 (1991), the defendant's counsel chose to argue that his client, who was charged with murder, was not present and had not participated in the death of the victim. The Court held that even if the trial court might have been required to grant the defendant's request for a self-defense charge had the request been made, "in the face of non-compatible defense strategy" of not requesting such a charge, the trial court did not commit plain error in not charging self-defense sua sponte. Id. at 162, 590 A.2d 624. The Court explained:
Trial courts must carefully refrain from preempting defense counsel's strategic and tactical decisions and possibly prejudicing defendant's chance of acquittal. The public interest, while important, may not overwhelm defendant's interest in pursuing a legitimate defense in the complex setting of a criminal trial....
....
Hence, despite the arguable appropriateness of the self-defense charge, such a charge would have been directly contrary to defendant's position at trial, could have prejudiced his chances of being acquitted of knowing murder by emphasizing his presence at the murder scene, and would have forced counsel to have foresaken or altered his chosen strategy. In a close case, forcing counsel to incorporate defenses that pre-suppose the existence of the very fact his main method of defense contests destroys *1188 the credibility and coherence of the defense entirely. Our analysis of the duties of a trial judge must be "seasoned by a degree of deference to defense counsel's strategic decisions."
[Id. at 162-63, 590 A.2d 624 (internal citations omitted).]
We followed the same rationale in State v. Vasquez, 265 N.J.Super. 528, 628 A.2d 346 (App.Div.), certif. denied, 134 N.J. 480, 634 A.2d 527 (1993). The defendant appealed his conviction for the murder of his girlfriend, asserting as plain error the court's failure to sua sponte instruct the jury on self-defense. Id. at 547, 628 A.2d 346. We affirmed, reasoning that although the testimony may have established evidence supporting a theory of self-defense, the trial court would have prejudiced the defense counsel's strategy had it instructed the jury sua sponte. Id. at 548-50, 628 A.2d 346. Because the defendant denied in his trial testimony playing any part in the victim's murder and, in fact, rested his case on the theory that defendant's friend had killed the victim, we determined that any charge of self-defense could have implied that the court believed the defendant and the victim had engaged in a struggle, although the defendant had explained his injuries at the time of the arrest as attributable to other causes. Id. at 550, 628 A.2d 346. We stated:
The trial court's failure to charge self-defense sua sponte did not amount to plain error. Defense counsel chose a strategy which the trial court appropriately decided not to interfere with. Any charge on self-defense would have prejudiced defendant and increased the likelihood of the murder conviction....
[Ibid.]
Defendant's trial strategy here rested on the theory that he did not commit the assault but, rather, he was cajoled by the police during his interview into stating he was intoxicated. As hypothesized in Perry and Vasquez, advising the jury of the possibility of the intoxication defense may have implied that defendant actually committed the acts though he had been drinking at the time, which defendant disputed. As such, charging intoxication over defendant's objection may have had the severe impact of prejudicing defendant's ability to defend the State's charges in the manner he and his counsel saw fit and thus impaired his right to a fair trial.

III.
In view of our remand for retrial, we need not address defendant's evidentiary challenges raised in Points II, IV, or V, the challenge to his sentence in Part VI, or the arguments raised in his pro se brief. With respect to defendant's challenge to the jurors taking L.T.'s videotaped interview with them into the deliberation room contained in Point II, we note that subsequent to trial the Supreme Court decided State v. Burr, 195 N.J. 119, 134-35, 948 A.2d 627 (2008), which provides for a prospective special treatment of child victims' videotaped pretrial testimony requiring that playbacks or read backs occur in open court rather than in the jury room.
Reversed and remanded for a new trial.
ESPINOSA, J.S.C., temporarily assigned, dissenting.
This case requires us to review one of the more difficult decisions a trial judge must make in a criminal trialthe decision to give a charge that is objected to by counsel, a decision which, the majority acknowledges, was given thoughtful consideration by the judge in this case. Taking stock of defendant's own statements that his intoxication played a role in the sexual assaults charged, the trial court determined that an instruction on voluntary intoxication *1189 was needed to guide the jury in its deliberations. This was a reasonable exercise of discretion that comported with the trial court's duty to give a "road map" of instructions applicable to the evidence the jury had to evaluate. Nonetheless, because defense counsel objected, the majority concludes that the instruction could only be given "where the facts in evidence `clearly indicate' the appropriateness of that charge," and that, therefore, the trial court committed reversible error. However, counsel's objection failed to articulate cognizable prejudice and rested upon an erroneous legal premise. In concluding that the instruction was reversible error, the majority relies upon authorities that measured and rejected claims of plain error in clearly distinguishable circumstances. That reliance is misplaced and expands the application of the "clearly indicated" standard well beyond its roots. Further, because this was a "road map" instruction rather than one charging a lesser-included offense, the evidence necessary to justify the charge is measured far more liberally and was sufficient here. Finally, the alleged error in the charge was isolated and neither rendered the charge as a whole misleading nor led the jury to an unjust result. For these reasons, I respectfully dissent.[1]

I
The task for the trial court would be infinitely easier if we allowed the court to defer completely to the expressed requests of counsel. But that is not the trial court's obligation. We charge the trial court with the "absolute duty to instruct the jury on the law governing the facts of the case." State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988) (emphasis added). The jury charge is "a road map to guide the jury and without an appropriate charge a jury can take a wrong turn in its deliberations." State v. Savage, 172 N.J. 374, 387, 799 A.2d 477 (2002). Because jurors are free to accept or reject, in part or in whole, any aspect of testimonial evidence based on credibility, State v. Coleman, 46 N.J. 16, 43, 214 A.2d 393 (1965), cert. denied, 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966); State v. Conway, 193 N.J.Super. 133, 150, 472 A.2d 588 (App. Div.), certif. denied, 97 N.J. 650, 483 A.2d 174 (1984), the charge must provide "a comprehensive explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." State v. Koskovich, 168 N.J. 448, 508, 776 A.2d 144 (2001) (emphasis added) (quoting Concepcion, supra, 111 N.J. at 379, 545 A.2d 119 and State v. Green, 86 N.J. 281, 287-88, 430 A.2d 914 (1981)).
The evidence here included two versions of the facts provided by defendant. In defendant's statement to the police, he admitted that he probably committed the sexual assaults based upon the statement of his nephew, L.T., but did so when he was drunk. At trial, he denied sexually assaulting his nephew and explained that his prior admissions were the product of police coercion. The jury was bound to determine which of these versions to accept and which to reject. If the jury found the statement to the police more credible than defendant's testimony at trial, it needed the legal principles necessary to evaluate the evidence of intoxication. By providing a charge on voluntary intoxication, the trial court discharged its "absolute duty" to equip the jury with those principles.
*1190 Nonetheless, the majority concludes that a charge to which a defendant objects should be given "only where the facts in evidence `clearly indicate' the appropriateness of that charge." The "clearly indicated" standard employed can be traced to dicta in State v. Powell, 84 N.J. 305, 318, 419 A.2d 406 (1980) ("[W]here the facts clearly indicate the possibility that the crime was manslaughter based upon either provocation/passion or imperfect self-defense, we see no reason why the trial judge should not also be obliged [to give the instruction], even without any request....") (emphasis added). While the Supreme Court spoke of evidence that clearly indicated the possibility of a lesser offense, the majority raises the bar higher by measuring the sufficiency of the evidence required to justify the charge against what is necessary for a successful intoxication defense.
The authorities relied upon do not support this interpretation or the proposition that a defense objection precludes the trial court from giving any charge unless its appropriateness is clearly indicated by the evidence. The application of the "clearly indicated" standard in these cases is distinguishable in two important ways.
First, the nature of the judicial action reviewed is entirely different. In Powell and the cases that followed, the Supreme Court defined what quantum and quality of evidence rendered a trial court's failure to give a charge sua sponte plain error. In each case, the court found no plain error in the failure to act sua sponte. See State v. Vasquez, 265 N.J.Super. 528, 628 A.2d 346 (App.Div.), certif. denied, 134 N.J. 480, 634 A.2d 527 (1993) (failure to charge self-defense in murder case sua sponte was not plain error); State v. Choice, 98 N.J. 295, 486 A.2d 833 (1985) (where Appellate Division had reversed conviction on grounds that it was plain error for trial court to fail to give manslaughter charge sua sponte, Supreme Court reversed and reinstated conviction because manslaughter was not "clearly indicated" by evidence); State v. Perry, 124 N.J. 128, 162-63, 590 A.2d 624 (1991) (failure to charge passion/provocation manslaughter and self-defense sua sponte was not plain error). Similarly, in State v. Cameron, 104 N.J. 42, 514 A.2d 1302 (1986), the Court concluded that the evidence was insufficient "to require the trial court to charge the jury on defendant's intoxication, as defendant requested." Id. at 44, 514 A.2d 1302 (emphasis added).
None of these cases concluded that a trial court committed reversible error in giving a "road map" instruction of legal principles to assist the jury in navigating through the evidence. While the cases limit the duty of the trial court to act sua sponte, none of the cases suggest a coterminous limitation on the trial court's discretion to charge the jury regarding the evidence. Plainly, the quantum and quality of evidence sufficient to require an instruction will be greater than the evidence that would support a trial court's exercise of discretion in determining that instructions were necessary to guide the jury in its deliberations. Therefore, these cases cannot be read as limiting judicial discretion to evaluate what instructions are appropriate based upon the evidence in the case.
Second, the "clearly indicated" standard first discussed in Powell was applied to the question whether a lesser-included offense should be charged.[2] Unlike the challenged *1191 instruction here, the trial court's discretion to charge a lesser-included offense over the defendant's objection is circumscribed by both constitutional and statutory requirements. Article I, Paragraph 8 of the New Jersey Constitution provides,
No person shall be held to answer for a criminal offense unless on the presentment or indictment of a grand jury.
As a result, a charge that is not "fairly included" in the indictment cannot be presented to the jury unless the defendant waives his constitutional right and agrees to proceed without indictment. State v. Thomas, 187 N.J. 119, 129-133, 900 A.2d 797 (2006); State v. Ciuffreda, 127 N.J. 73, 76, 602 A.2d 267 (1992). N.J.S.A. 2C:1-8(e) imposes an additional condition:
The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.
To satisfy this condition, the evidence must present a rational basis for a jury to acquit on the greater charge but convict on the lesser included charge. See State v. Jenkins, 178 N.J. 347, 361-364, 840 A.2d 242 (2004); State v. Garron, 177 N.J. 147, 180, 827 A.2d 243 (2003), cert. denied, 540 U.S. 1160, 124 S.Ct. 1169, 157 L.Ed.2d 1204, (2004); State v. Messino, 378 N.J.Super. 559, 581, 876 A.2d 818 (App.Div.), certif. denied, 185 N.J. 297, 884 A.2d 1266 (2005). See also N.J.S.A. 2C:1-8; Cannel, New Jersey Criminal Code Annotated, comment 12 on N.J.S.A. 2C:1-8 (2008).
Even while noting the "possible complexities at the trial level in a criminal matter that may arise from a [lesser-included] charge not requested by any of the parties," the Supreme Court recognized that
the decisions of their counsel were not the only interests involved in a criminal matter; that the public interest, especially in a criminal case, may go well beyond the interests of the parties.
[Choice, supra, 98 N.J. at 301, 486 A.2d 833 (citing Powell, supra, 84 N.J. at 319, 419 A.2d 406).]
The "balancing of these various interests" remained the province of the trial court. Ibid. See also Green, supra, 86 N.J. at 289-290, 430 A.2d 914 (court may exercise broad discretion on whether to grant certain types of requests to charge the jury); State v. Speth, 324 N.J.Super. 471, 474, 735 A.2d 1200 (Law Div.1997) ("[T]he trial judge must retain such general discretion over the conduct of the proceedings as is necessary to insure a fair trial."). Therefore, the mere fact of an objection does not invariably trump the discretion of the trial court, even when these constitutional and statutory constraints are in place.
Since the trial court's decision here did not involve the propriety of charging a lesser-included offense, these constraints on judicial discretion did not apply. Nonetheless, the majority applies the restrictive "clearly indicated" standard without considering the incursion upon judicial discretion posed by a mechanical application of the standard or that the result represents a significant expansion beyond its original context.

II
The majority finds the evidence of intoxication deficient because, in part, it lacks such details as blood alcohol content, the exact amount of alcohol consumed or the precise hours spent drinking prior to the offense. This criticism fails to consider that the sexual assaults for which defendant was convicted occurred over a period *1192 of six years, starting when L.T. was approximately four years old. As the precise dates of these assaults were unknown, the details that might be available for one discrete crime could not reasonably be expected to be available. Therefore, the absence of these details should not preclude the trial court from giving an instruction on intoxication if there is other evidence for the jury to consider.
There was evidence of a pattern of drinking to the point of intoxication that was associated with the criminal behavior charged. In surveying the facts, the trial court could not ignore defendant's statement to the police.[3] In that statement, defendant acknowledged that he drank four to eight beers on a daily basis, to get a "buzz but at time it must be half way drunk."
Defendant never unequivocally admitted or denied the allegations but instead, faulted his intoxication for the fact that the allegations were made, the likelihood that the assaults occurred and his lack of recollection of them.
He stated that the allegations against him were the "results of me probably drunk, of me drinking." He denied ever thinking of the victim in a sexual way when sober: "Not with no clear head I didn't never did, no." Yet, conceding that it was possible that the assaults occurred, he explained, "I was drinking and something sick like that happened so, yeah I feel it very possible." Defendant also explained that the assaults occurred at night because that was "while I'm drinking." He also stated that he was intoxicated when he assisted the victim in using the bathroom at night and may have had his hand touch the victim's penis but did not recall "either inserting [his] penis [or finger] into [the victim's] butt...."
Defendant repeatedly stated that he did not remember doing any of the acts alleged. For example, he states:
I might have had sexual intercourse with him, yeah. I really can't remember so I might have been very intoxicated at the time.
[I]t's going to be a possibility of me doing that but like I said but being drunk remember but if he recalls then I must did.
His continuing and apparently conflicting allusions to a lack of recollection and to the possibility that the sexual abuse occurred led to this exchange:
Q. But then you keep saying you don't recall but you already [said] it's a possibility that you did it. Are you saying you can't recall as an excuse?
A. No, I'm not. I'm saying I can't recall cause I don't remember it but the possibility if I was drinking it could've happened.
The jury had to determine whether to accept defendant's testimony, in which he denied the assaults, or his statement to the police, in which he attributed the assaults that possibly occurred to his intoxication. In his statement, he repeatedly stated that he never would have engaged in such conduct if not intoxicated and that he had no recollection of the assaults. If the jury accepted these statements as credible, it could find that the assaults occurred only when defendant was intoxicated; that he consumed beer on a daily basis to at least the point of a "buzz," if not intoxication, and that his inability to recall the events was the result of alcohol-induced blackouts. Further, in light of his repeated *1193 protestations that he considered such behavior "sick" and could not have engaged in it unless intoxicated, the jury could have found that his level of intoxication negated the element of knowing behavior required to sustain a guilty verdict on any of the offenses. As the trial court observed, "there is some evidence in this case in which a reasonable jury could find intoxication as a defense."
Once the court reached that threshold, an instruction on voluntary intoxication was required to discharge the duty to provide "the law of the case applicable to the facts that the jury may find." Koskovich, supra, 168 N.J. at 507, 776 A.2d 144 (emphasis added). An instruction that fails to do so "engenders too great a risk that the jury's ultimate determination of guilt or innocence will be based on speculation, misunderstanding, or confusion." State v. Olivio, 123 N.J. 550, 567-68, 589 A.2d 597 (1991). If the court had deferred to the wishes of counsel, the jury would have been left without guidance as to how to weigh facts clearly before them, and its evaluation of that evidence could only have been based on speculation. Driving blind, the likelihood of a wrong turn in the jury's deliberations would have been a genuine hazard.

III
The majority concludes that reversal is required because the evidence fails to demonstrate the "prostration of faculties" needed to support a successful intoxication defense. See Cameron, supra, 104 N.J. at 54, 514 A.2d 1302. However, assuming the majority's assessment of the evidence is correct, that does not mean that the decision to give the charge was error, let alone reversible error. Because of the nature of the voluntary intoxication defense, an instruction remained relevant even if the evidence was insufficient to establish the defense.
N.J.S.A. 2C:2-8 provides that intoxication is a defense only to crimes that require purposeful or knowing mental states and is not a defense to crimes that require states of recklessness or negligence. Cameron, supra, 104 N.J. at 53, 514 A.2d 1302; State v. Stasio, 78 N.J. 467, 481-83, 396 A.2d 1129 (1979); see also Model Penal Code § 2.08. Therefore, like diminished capacity, N.J.S.A. 2C:4-2, State v. Reyes, 140 N.J. 344, 354, 658 A.2d 1218 (1995), and mistake of fact, N.J.S.A. 2C:2-4(a)(1), State v. Pena, 178 N.J. 297, 839 A.2d 870 (2004), intoxication is a "failure of proof" defense. Unlike affirmative defenses that excuse conduct which is otherwise unlawful, the exculpatory effect of these defenses is limited to the consequence that follows when the evidence negates an essential element of the offense charged. State v. Bowens, 108 N.J. 622, 632, 532 A.2d 215 (1987); State v. Sexton, 160 N.J. 93, 99-100, 733 A.2d 1125 (1999). Whatever the state of evidence of intoxication, diminished capacity, or mistake of fact, the State remains obligated to prove that the defendant acted with the requisite mental state. State v. Nataluk, 316 N.J.Super. 336, 343, 720 A.2d 401 (App.Div.1998). "If there is reasonable doubt as to whether defendant's mental condition permitted him to form the requisite knowledge or purpose which constitutes an essential element of the crime, the defendant is entitled to an acquittal." Ibid.
The trial court's concern that the failure to give an instruction here might constitute reversible error was not unfounded. Our Supreme Court has recognized that even when evidence is insufficient to establish such a defense it may nevertheless be sufficient to create a reasonable doubt. Powell, supra, 84 N.J. at 314, 419 A.2d 406. In considering other "imperfect" failure *1194 of proof defenses, the Supreme Court has found reversible error when the trial court failed to instruct the jury on the defense. E.g., Pena, supra, 178 N.J. at 316, 839 A.2d 870; State v. Williams, 168 N.J. 323, 335, 774 A.2d 457 (2001). See also, State v. Sexton, supra, 160 N.J. at 106, 733 A.2d 1125; State v. Polk, 164 N.J.Super. 457, 462, 397 A.2d 330 (App. Div.1977), aff'd, 78 N.J. 539, 397 A.2d 327 (1979) ("[V]oluntary intoxication is not an absolute defense but may be considered by the jury in determining whether the intoxication" negated the requisite mental state.).
Clearly, an instruction on voluntary intoxication is not required in every case in which there is some evidence of alcohol or drug use. However, we consider here the exercise of discretion by the trial court that heard the case and determined that such a charge was appropriate based upon its evaluation of the evidence. The fact that a reviewing court considers the defense to be imperfect should not be grounds for reversal under these circumstances.

IV
In finding reversible error here, the majority views the defense objection to the voluntary intoxication charge as pivotal. However, the objection posed by defense counsel was deficient because it rested upon an erroneous legal premise and did not identify any cognizable prejudice to defendant.
To properly preserve an issue for appeal, "the trial judge [must] be made aware of the reasons for objection to judicial action or conduct." State v. Melton, 136 N.J.Super. 378, 381, 346 A.2d 424 (App.Div.1975). Every request must state the correct principle of applicable law in a manner that is tailored to the facts of the case and is not misleading. Green, supra, 86 N.J. at 290, 430 A.2d 914. An objection expressed in terms that make no legal sense is unacceptable and will subject the claim to review as plain error. State v. Nelson, 318 N.J.Super. 242, 250, 723 A.2d 627 (App.Div.), certif. denied, 158 N.J. 687, 731 A.2d 47 (1999); see also, State v. Gelb, 212 N.J.Super. 582, 589, 515 A.2d 1246 (App.Div.1986), certif. denied, 107 N.J. 633, 527 A.2d 456 (1987) (request to charge must state a correct principle of law in order for its denial to be error). The trial court may justifiably reject a request that is based upon an erroneous statement of law. Gelb, supra, 212 N.J.Super. at 589, 515 A.2d 1246.
Defense counsel explained his opposition to the charge as follows:
I think I can fairly say that I did tell my client, your Honor, that with an intoxication defense, two things happen.
Number One, because of what the Court read a few minutes ago, he does stand a chance of knocking the grade of the crime down from first degree down to second [] degree.

But, then that also puts in the jury's mindsthey may try to look at it as "Well, he was drunk"well, they may try to split the baby, so to speak, in the way of acquitting him of the more serious charge but still finding him guilty of a less serious charge due to the intoxication.

His position is that he was not intoxicated. They led him to make statements that were not true regarding intoxications.
He wants the jury to decide on the merits whether or not these things happened or whether or not they were misled by the child's statements and the mother's statements.
[(Emphasis added.)]
*1195 This objection fails to present any obstacle to the trial court's exercise of discretion. The nature of prejudice commonly found to preclude an instruction is that the instruction is "directly contrary to defendant's position at trial, ... forc[ing] counsel to ... forsake[] or alter[] his chosen strategy," or, in the case of a lesser-included offense, that the charge will "make defendant's conviction for the greater crime more likely." Vasquez, supra, 265 N.J.Super. at 549, 628 A.2d 346.[4] Defense counsel failed to articulate either type of prejudice and rested his argument upon an erroneous statement of law.
Defense counsel never contended that an intoxication charge would make it more likely that defendant would be convicted of the greater offense. Instead, he merely argued that the jury "may try to split the baby." In effect, he argued that the instruction increased the likelihood that the jury would convict defendant on the lesser offense rather than possibly acquitting him on all charges. This argument is wrong as a matter of law.
As noted, the effect of a successful intoxication defense is to negate the element of knowledge. Unlike murder cases in which voluntary intoxication provides a defense to a first-degree offense charged but not to lesser offenses, see e.g., State v. Warren, 104 N.J. 571, 579, 518 A.2d 218 (1986); State v. Klich, 321 N.J.Super. 388, 397, 729 A.2d 432 (App.Div.1999), all the offenses presented to the jury, including the lesser-included offense charged,[5] required the State to prove knowledge as an essential element of the offense. Therefore, if the jury concluded that defendant met the voluntary intoxication criteria, an acquittal was required on all charges. The instruction provided no legal basis for an acquittal on the more serious offenses and a conviction on the lesser offense.[6]
The objection also failed to articulate how the charge prejudiced defense strategy. Defendant may not rely upon mere inconsistency with the chosen defense. See Cameron, supra, 104 N.J. at 58, 514 A.2d 1302. The standard for such prejudice is met by "preempting defense counsel's strategic and tactical decisions," forcing counsel to "incorporate defenses that presuppose the existence of the very fact his main method of defense contests[,] destroy[ing] the credibility and coherence of the defense entirely." Vasquez, supra, 265 N.J.Super. at 549, 628 A.2d 346.
Yet, on appeal, defendant has only advanced the conclusory statement that "[c]harging intoxication over defendant's objection interfered with his trial strategy and right to defend the State's charges in the manner he and his counsel saw fit." *1196 He has offered no explanation as to how that is the case other than the fact that the court did not defer to his objection. That is not enough.
Pursuant to Rule 1:8-7(b), the trial court held a charge conference with counsel prior to summations and discussed with them at length its decision to give the jury a charge on voluntary intoxication. As a result, counsel had the opportunity to make any adjustments to their summations that they deemed appropriate. Garron, supra, 177 N.J. at 181, 827 A.2d 243 (citing Perry, supra, 124 N.J. at 160-161, 590 A.2d 624 and Choice, supra, 98 N.J. 295, 486 A.2d 833). However, a review of defense counsel's summation reveals no evidence of any coerced adjustment or, indeed, any irreconcilable conflict between his defense strategy and the intoxication charge:
Let's talk for a moment about the nature of what my client testified to happened before the audiotaping was done. When you listen to the tape of my client that was audiotaped, that segment that was audiotaped, you find out he makes some statements where he is hesitant, not comingtrying to figure out what is going on because they are asking him were there possibilities of things done.
He said "Possible? Yeah, it's possible".
Why was it possible? If you listen to him testify as to what happened before they started taping, the guy told him Hunsinger told him "You were drunk, this is why you don't remember".
And my client says "Well, if I was drunk and [L.T.] is saying I did this, everything is coming down on me saying I did it, I must have done it".
Trying to reconcile the two things.
When they press himkeep going through the transcript and they are pressing him and what he remembers and doesn't remember.
He says "I don't remember doing it."
He never admits he did it in the sense that he remembers doing these things because he didn't do these things.
In this, the only portion of the summation that addresses the intoxication evidence, defense counsel ably reconciled the disparity between defendant's statement to the police and his testimony at trial. Significantly, this was an issue that he had to address even if no instruction on intoxication was given. Moreover, there was no factual incompatibility between this argument and the instruction on voluntary intoxication. Indeed, defendant has not identified any argument that could not be made because the instruction was given. Therefore, the record simply does not bear out the conclusion that the instruction "impermissibly" interfered with defendant's chosen trial strategy.
In sum, neither the objection nor the summation reveal any cognizable prejudice to defendant as a result of the instruction on voluntary intoxication. As a result, the mere fact of objection did not present a legitimate basis for the trial court to surrender its judgment in deference to defense "strategy." "[E]nforcement of the criminal law is too important to be controlled completely by the contentions of the adversaries[.]" Choice, supra, 98 N.J. at 299, 486 A.2d 833. The trial court's absolute duty to instruct the jury on the law governing the facts of the case, Concepcion, supra, 111 N.J. at 379, 545 A.2d 119, supersedes defense strategy where, as here, there is no cognizable prejudice.
[T]he integrity of the justice system and the fact-finding process is not subordinate to the singular interests of the parties. The public interest in a correct verdict based on the evidence must *1197 trump the partisan strategic maneuvering of both the State and defendant.
[Garron, supra, 177 N.J. at 180, 827 A.2d 243 (citation omitted).]
See also State v. Grunow, 102 N.J. 133, 148, 506 A.2d 708 (1986).

V
The only challenge to the jury charge is the claim that the trial court erred in giving an instruction on voluntary intoxication. When the error alleged concerns only a portion of a charge, the challenged portion is not to be "dealt with in isolation but the charge should be examined as a whole to determine its overall effect." State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973); see also State v. Delibero, 149 N.J. 90, 106, 692 A.2d 981 (1997).
A party is entitled only to a charge that is accurate and that does not, on the whole, contain prejudicial error. As such, the test is to examine the charge in its entirety, to ascertain whether it is either ambiguous and misleading or fairly sets forth the controlling legal principles relevant to the facts of the case. [State v. LaBrutto, 114 N.J. 187, 204, 553 A.2d 335 (1989) (citation omitted).]
"Reversal of a conviction will be warranted only if the instruction, taken as a whole, proves to be misleading or prejudicially ambiguous." Gelb, supra, 212 N.J.Super. at 589, 515 A.2d 1246 (citing State v. Hipplewith, 33 N.J. 300, 317, 164 A.2d 481 (1960)). Even when there is an objection, error must be "clearly capable of producing an unjust result" to justify reversal. R. 2:10-2; State v. Macon, 57 N.J. 325, 336-39, 273 A.2d 1 (1971). The fact that the trial court did not incorporate the defense theory in the jury charge by omitting a charge on intoxication does not raise a reasonable doubt that the jury would have reached a different result. See State v. Brims, 168 N.J. 297, 307, 774 A.2d 441 (2001); see also LaBrutto, supra, 114 N.J. at 204, 553 A.2d 335.
In reversing defendant's conviction based upon one isolated alleged error, the majority did not examine the charge in its entirety as required. As reflected by defendant's failure to object to any other portion of the charge, the charge accurately identified the elements of each offense, correctly informed the jury of the State's burden of proof and properly charged the jury on the only appropriate lesser-included offense.
Defendant was convicted of the offenses in the indictment. Therefore, he did not suffer the only prejudice ever identified by his counselconviction of a lesser offense. The evidence of defendant's guilt included his own statement to the police and the testimony of the victim regarding the assaults. If accepted by the jury, this evidence was more than adequate to support the verdict. Neither the defense nor the majority has explained how the omission of an instruction on intoxication would have produced a different result.
In summary, the trial court's decision to provide the jury with an instruction on involuntary intoxication was an appropriate exercise of discretion based upon the court's evaluation of the evidence. The court was not obliged to abandon this judgment in the face of an objection that failed to articulate cognizable prejudice to defense strategy. The record fails to show that defendant was prejudiced by the charge. The verdict had adequate support in the evidence and the isolated error alleged within the context of an otherwise unchallenged charge lacked the capacity to lead to an unjust result.
For these reasons, I dissent from the majority's conclusion that it was reversible error for the trial court to provide the jury *1198 with instructions applicable to the evidence of intoxication.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Copied verbatim from the transcribed audiotaped statement.
[3] It is not disputed by the State that the police conducted a pre-interrogation and pre-taping interview of defendant.
[4] State v. Cameron also cites the following cases holding that the evidence was insufficient to warrant a jury charge on intoxication: State v. Selby, 183 N.J.Super. 273, 276, 443 A.2d 1076 (App.Div.1981) (defendant shared with three others a marijuana pipe for about ten minutes, as a result of which he was "high" and felt "pretty good"); State v. Moore, 178 N.J.Super. 417, 424, 429 A.2d 397 (App.Div.1981) (200-pound defendant shared half of a pint of vodka with her co-defendant, then "had to ... get another drink to get [her] nerves back up" before joining in the crime, as to the events preceding, during, and following which she had almost total recall); State v. Kinlaw, 150 N.J.Super. 70, 72, 374 A.2d 1233 (App.Div.1977) (on the day of the crime defendant drank beer between 11 a.m. and 2 p.m. and described himself as "drunk"); and State v. Ghaul, 132 N.J.Super. 438, 441, 334 A.2d 65 (App.Div.1975) (defendant testified he had been "drinking all day," police officer detected odor of alcohol on defendant's breath and thought his driving was impaired, but defendant's own testimony indicated he could think clearly at the time the crime was committed as he could describe the pertinent events, and he had "sufficient presence of mind to take over the driving and to lie to the police ..."). Id. at 55-56, 514 A.2d 1302.
[5] Defense counsel informed the trial court that he explained the potential benefits of an intoxication defense but that "defendant's position is that he was not intoxicated [and the police] led him to make statements that were not true regarding intoxication[]." Defendant also "want[ed] the jury to decide on the merits whether or not these things happened or whether or not they were misled by the child's statements or the mother's statements."
[6] State v. Bey, 112 N.J. 123, 143, 548 A.2d 887 (1988) (Defendant testified that "beginning approximately four and one-half hours before the incident and continuing until he first saw [the victim] he consumed [120] ounces of malt liquor, some straight rum, and smoked a considerable amount of marijuana."); State v. Frankland, supra, 51 N.J. at 223, 238 A.2d 680 (Defendant testified "he had consumed fifteen drinks of scotch and water and could not remember the events of the evening.").
[7] State v. Polk, supra, 164 N.J.Super. at 460-62, 397 A.2d 330 (question of defendant's consumption of alcoholic beverages permeated the entire trial-on the day of the killing, defendant drank beer and wine from 9 a.m. until sometime in the afternoon; record of amount of alcoholic beverages consumed by defendant was not precise but was unquestionably "substantial"; detective smelled alcohol on defendant's breath two hours after the killing; drinking companion/victim had blood-alcohol concentration of 0.158; defendant acted irrationally, hitting baby with his fist and throwing baby down onto a porch; investigator found beer cans strewn around the scene of the killing); State v. Holzman, 176 N.J.Super. 590, 592, 424 A.2d 454 (Law Div.1980) (defendant took four Fiorinal tablets, a mild sedative, and drank two "Black Russian" drinks on the day and evening of her drunk driving offense; displayed unusual and irrational behavior at the police station; and denied all recollection of events occurring one hour prior to her crime).
[1] I concur with the majority's decision that defendant's motion to suppress his statement was properly denied.
[2] Although Cameron did not involve a lesser included offense, it remains distinguishable because, as noted above, the "clearly indicated" standard was applied to determine whether the trial court committed plain error in failing to act sua sponte. 104 N.J. at 44, 514 A.2d 1302.
[3] The fact that the evidence of intoxication was presented by the State and repudiated by defendant is of no moment. See Powell, supra, 84 N.J. at 320, 419 A.2d 406 (evidence in statement disavowed by defendant was sufficient to require manslaughter instruction).
[4] The majority cites Perry, supra, and Vasquez, supra, as authority for the proposition that the trial court here was required to defer to the strategy of defense counsel. However, both cases are distinguishable. In both cases, defense counsel did not request a self-defense charge and the issue on appeal was whether it was plain error for the trial court to fail to charge self-defense sua sponte. No error was found in either case because, under the facts of the case, a sua sponte charge on the lesser included offense would make the conviction for the greater offense more likely. That level of incompatibility with the factual underpinnings of the defense strategy is absent here.
[5] Defendant was charged with two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(1); two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(7); and one count of second-degree endangering the welfare of a minor, N.J.S.A. 2C:24-4(a). Endangering the welfare of a child, N.J.S.A. 2C:24-4(a) was also charged as a lesser-included offense.
[6] Because the premise for defense counsel's objection was therefore erroneous, this alleged error is properly subject to a plain error standard. Nelson, supra, 318 N.J.Super. at 250, 723 A.2d 627.